1  Michael J. Grace (SBN 76581)
2  Graham S.P. Hollis (SBN 120577)
   Diane E. Richard (SBN 204897)
3  Grace**Hollis** LLP
   3555 Fifth Avenue
4  San Diego, California 92103
   Telephone:  (619) 692-0800
5  Facsimile:   (619) 692-0822
6  Email: mgrace@gracehollis.com
   ghollis@gracehollis.com
7  drichard@graceholllis.com

8  Thomas D. Rutledge (SBN 200497)
9  Attorney-at-Law
   3555 Fifth Avenue, Suite 102
10 San Diego, California 92103
   Telephone:  (619) 886-7224
11 Facsimile:   (619) 259-5455
   Email: rutledgelaw@cox.net
12

13 Attorneys for Plaintiffs KENNETH B. YOUNG and MICHAEL E. TAYLOR

14            UNITED STATES DISTRICT COURT

15          FOR THE SOUTHERN DISTRICT OF CALIFORNIA

16

17 KENNETH B. YOUNG, MICHAEL E.          | Case No. 09 CV 02909 DMS WVG
   TAYLOR, individuals, on behalf of themselves
18 individually and on behalf of others similarly | INDIVIDUAL, CLASS ACTION AND FLSA
   situated,                             | COLLECTIVE ACTION FIRST AMENDED
19                                        | COMPLAINT FOR:
                                          | Collective Action
20            Plaintiffs,                 |  (1)  Failure to Pay FLSA Minimum Wages;
                                          |  (2)  Failure to Pay FLSA Overtime Wages;
21 vs.                                    | California Class Action
                                          |  (3)  Failure to Timely Pay Wages During
22                                        |       Employment and Upon Separation of
   WADDELL & REED INC., a Delaware        |       Employment;
23 Corporation; WADDELL & REED            |  (4)  Failure to Pay Minimum Wages;
   FINANCIAL, INC., a Delaware Corporation; |  (5)  Failure to Pay Overtime Compensation;
24 WADDELL & REED FINANCIAL              |  (6)  Failure to Provide Meal Periods;
   SERVICES, INC., a Missouri Corporation; |  (7)  Failure to Reimburse Loses and Business
25 WADDELL & REED INVESTMENT            |       Expenses;
   MANAGEMENT COMPANY, a Kansas          |  (8)  Failure to Provide Itemized Wage
26 Corporation, and DOES 1 through 10 inclusive |       Statements; and
                                          |  (9)  Unfair Business Practices in Violation of
27                                        |       Cal. Bus. & Prof. Code §§ 17200, *et seq.*
                              Defendants. | JURY TRIAL DEMANDED
28

**- 1 -**
FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

*(left margin, rotated)* Thomas D. Rutledge / Attorney-at-Law / 3555 Fifth Avenue, First Floor / San Diego, California 92103 / Telephone: (619) 886-7224 / Facsimile: (619) 259-5455

Thomas D. Rutledge
Attorney-at-Law
3555 Fifth Avenue, First Floor
San Diego, California 92103
Telephone: (619) 886-7224
Facsimile: (619) 259-5455

1   Plaintiffs, KENNETH B. YOUNG and MICHAEL TAYLOR ("Plaintiffs YOUNG and

2   TAYLOR" or "Plaintiffs") on behalf of themselves and other similarly situated persons, allege

3   against Defendants Waddell & Reed, Inc., Waddell & Reed Financial, Inc., Waddell & Reed

4   Financial Services, Inc, Waddell & Reed Investment Management Company and Does 1 -10

5   (collectively "Defendants" or "WADDELL & REED") as follows:

6   <div align="center">**NATURE OF THE ACTION**</div>

7       1.      This is an individual, class action and FLSA collective action seeking, among other

8   things, the recovery of unpaid wages and penalties for Defendants' wage and hour violations arising

9   from Defendants' scheme of misclassifying persons engaged primarily in, or training to be engaged

10  in, the business of inside-sales of financial products and securities for Defendants including but not

11  limited to individuals holding the positions of "Advisor," "Financial Sales," "Senior Financial

12  Advisor," "Representative," and/or "Financial Advisor," ("Advisors") as "independent contractors,"

13  exempt from wage and hour protections.

14      2.      Defendants are in the business of selling financial products.  Its retail products are

15  distributed through its sales force of registered Advisors who are responsible for focusing their

16  efforts primarily on the sale of investment products advised by Defendants [Source: Waddell &

17  Reed Financial, Inc. 10-K, February 27, 2009].  It is believed that Defendants' Advisors are one of

18  the largest sales forces in the United States selling primarily mutual funds.  [Source: Waddell &

19  Reed Financial, Inc. 10-K, February 27, 2009].

20      3.      This lawsuit arises because Defendants have, for at least four years preceding the

21  filing of this Complaint, trampled on the rights of its Advisors by routinely and systematically

22  misclassifying them as independent contractors when, in fact, these Advisors are "employees,"

23  thereby denying Advisors wage and hour protections including minimum and overtime wages,

24  reimbursements of expenditures incurred as a direct consequence of their employment and meal

25  period, all of which contribute to Defendants' deliberate unfair competition.  Defendants for

26  example do not pay Advisors at least the applicable minimum and overtime rates for all hours

27  suffered and permitted to work, rather it forces Advisors to live solely off commission payments.

28  Advisors sometimes go months without receiving any income from Defendants.

4.       An employer's obligation to pay its employees minimum wage and overtime wages is more than a matter of private concern between parties.  That obligation, codified in Federal and state law, rests upon a compelling public policy that workers are entitled to work a reasonable number of hours, be paid for all hours suffered or permitted to work at a minimum at the applicable minimum and overtime hourly rates, be timely paid wages and commissions both during employment and upon termination of employment, be reimbursed for losses and expenses incurred in direct consequence of their duties, and be provided with meal periods.

5.       Plaintiffs YOUNG and TAYLOR, former Advisors for Defendants, maintain they and other Advisors were misclassified as independent contractors when instead they should have been treated as employees entitled to the rights and benefits of  state and Federal wage and hour laws.

6.       Whether a worker is an "employee" or an "independent contractor" for the purposes of wage and hour laws is determined by applying the "economic realities test," also known as the "multi-factor" test.  On information and belief, Plaintiffs YOUNG and TAYLOR and other Advisors were/are employees of Defendants, not independent contractors.  The California Employment Development Department ("EDD"), in response to a claim for unemployment benefits made by YOUNG, determined that YOUNG was a "misclassified worker.  There may be others who performed the same services as [YOUNG] under the same conditions." [Source: EDD Obstructed Claim Report March 13, 2008].

7.       On information and belief, Defendants decrease its employment-related and operation expenses to position itself to offer customers better rates than its law-abiding competitors. Defendants reduce these costs through its uniform business model of purposefully classifying its Advisors as independent contractors.  In its 10-K disclosure filed with the SEC on February 27, 2009, for example, Defendant Waddell & Reed Financial, Inc. states under the Section titled "Item 1A.  Risk Factors, " "Our Financial Advisors Are Classified As Independent Contractors, And Changes To Their Classification May Increase Our Operating Expenses."  It further states: "[w]e classify the majority of our financial advisors as independent contractors for all purposes, including employment tax and employee benefit purposes."  It further discloses that the "costs associated with

Thomas D. Rutledge
Attorney-at-Law
3555 Fifth Avenue, First Floor
San Diego, California 92103
Telephone:  (619) 886-7224
Facsimile:  (619) 259-5455

- 3 -

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1    potential changes, if any, with respect to these independent contractor classifications could have a

2    material adverse effect" on it including its "results of operations and financial condition if [it] were

3    unable to reflect them in [its] compensation arrangements with financial advisors."

4        8.    By this action, Plaintiffs YOUNG and TAYLOR seek relief on behalf of themselves

5    and other Advisors that were misclassified as independent contractors by Defendants in order to

6    avoid, among other things, the requirement to pay employment taxes and other employment benefits,

7    workers compensation, and minimum protections under wage and hour laws such as minimum and

8    overtime wages, reimbursement of business expenses, and meal periods.

9        9.    Plaintiffs YOUNG and TAYLOR bring this action under federal law (collectively,

10   "FLSA Plaintiffs") on behalf of themselves individually and also on behalf of other similar Advisors

11   whom Defendants unlawfully deprived of the overtime and minimum wages to which they were

12   entitled under the federal Fair Labor Standards Act ("FLSA"), as codified at 29 U.S.C. §§ 206 and

13   207 to recover among things unpaid wages, liquidated damages, attorneys' fees, interest and costs.

14   FLSA Plaintiffs bring all federal causes of action as an opt-in collective action pursuant to 29 U.S.C.

15   §§ 216(b).

16       10.   Plaintiffs YOUNG and TAYLOR also bring this lawsuit under California law

17   (collectively "California Plaintiffs") seeking declaratory, injunctive and monetary relief against

18   Defendants on behalf of themselves individually and also on behalf of other similarly situated

19   Advisors to recover, among other things pursuant to provisions regulating hours and days of work in

20   the applicable wage order of the Industrial Welfare Commission and California Labor Code §§ 201,

21   202, 203, 204, 218, 218.5, 218.6, 226, 226.7, 510, 512, 1194, 1194.2, 1197, and 2802., (i) daily and

22   weekly unpaid overtime compensation; (ii) waiting time penalties under §203 of the California

23   Labor Code; (iii) meal premiums; (iv) unpaid wages including unpaid regular, minimum and

24   commission wages, (v) reimbursement for business expenses that should have been paid by

25   Defendants, (vi) reasonable attorneys' fees, costs, interest, liquidated damages and Labor Code §226

26   remedies; (v) disgorgement and restitution of all ill-gotten gains from the unlawful conduct engaged

27   in by Defendants; and (vi) injunctive relief enjoining Defendants from classifying and treating its

28   Advisors as independent contractors and not complying with applicable wage and hour laws and

Thomas D. Rutledge
Attorney-at-Law
3555 Fifth Avenue, First Floor
San Diego, California 92103
Telephone: (619) 886-7224
Facsimile: (619) 259-5455

- 4 -

1  other employment-related statutes and regulations.   California Plaintiffs bring all causes of action

2  under California law as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

3  **JURISDICTION AND VENUE**

4       11.    This Court has subject matter jurisdiction over Plaintiffs' FLSA claims pursuant to

5  28 U.S.C. § 1331 because the action alleges violations of a federal statute, 29 U.S.C. §§ 206 and

6  207 and is brought pursuant to 29 U.S.C. § 216(b).  Supplemental jurisdiction exists over Plaintiffs'

7  state law claims pursuant to 28 U.S.C. § 1367.

8       12.    The Court has personal jurisdiction over Defendants because Defendants presently

9  and at all times relevant to this action have conducted substantial and continuous commercial

10  activities including maintaining offices in California.  Defendant Waddell & Reed, Inc. additionally

11  has a Registered Agent in California.

12       13.    Venue is proper in the Southern District of California pursuant to 28 U.S.C. § 1391

13  because a substantial part of the events and omissions giving rise to this action occurred in this

14  District and because this Court has personal jurisdiction over the Defendants.

15  **PARTIES TO THIS ACTION**

16       14.    Plaintiff KENNETH B. YOUNG is an individual who worked for Defendants as an

17  Advisor in the city of San Diego, State of California during the period of about November 2005 to

18  on or about December 31, 2007.

19       15.    Plaintiff MICHAEL E. TAYLOR is an individual who worked for Defendants as an

20  Advisor in the city of San Diego, State of California during the period of about November 2005 to

21  on or about January 8, 2008.

22       16.    Defendant WADDELL & REED FINANCIAL, INC. is a Delaware corporation doing

23  business in the County of San Diego, California.  Founded in 1937, it is one of the oldest mutual

24  fund complexes in the United States and conducts business through its subsidiaries. [Source:

25  Waddell & Reed Financial, Inc. 10k, February 27, 2009]  At all times relevant, it has operated and

26  engaged in business throughout the United States including California where it operates offices.

27  ///

28  ///

Thomas D. Rutledge
Attorney-at-Law
3555 Fifth Avenue, First Floor
San Diego, California 92103
Telephone: (619) 886-7224
Facsimile: (619) 259-5455

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Thomas D. Rutledge
Attorney-at-Law
3555 Fifth Avenue, First Floor
San Diego, California 92103
Telephone: (619) 886-7224
Facsimile: (619) 259-5455

17.     Defendant WADDELL & REED, INC., an affiliate and wholly owned subsidiary of Defendant WADDELL & REED FINANCIAL, INC. is a Delaware corporation doing business in the County of San Diego, California and has a Registered Agent in California.  At all times relevant, it has operated and engaged in business throughout the United States including California where it operates offices.  WADDELL & REED, INC. is a wholly owned subsidiary of WADDELL & REED FINANCIAL SERVICES, INC.

18.     Defendant WADDELL & REED FINANCIAL SERVICES, INC., an affiliate and wholly owned subsidiary of Defendant WADDELL & REED FINANCIAL, INC., is a Missouri corporation doing business in the County of San Diego, California.  At all times relevant, it has operated and engaged in business throughout the United States including California.

19.     On information and belief, Defendant WADDELL & REED INVESTMENT COMPANY an affiliate and subsidiary of WADDELL & REED FINANCIAL, INC. and an affiliate of WADDELL & REED, INC.  is a Kansas corporation authorized to do business throughout the United States including California.  WADDELL & REED FINANCIAL, INC. "operates its [our] investment advisory business through its [our] subsidiary companies, *primarily* Waddell & Reed Investment Management Company, a registered investment advisor…"  [Source: 10-K, emphasis added]

20.     Plaintiffs are informed and thus believe and on that basis allege that Defendants have been and continues to be "an enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA, 29 U.S.C. § 203 as it is in the business of selling goods or materials through offices throughout the United States.

21.     The true names and capacities, whether individual, corporate, associate or otherwise of the Defendants named herein as DOES 1 through 10, are unknown to Plaintiffs at this time.  Plaintiffs therefore sue said Defendants by such fictitious names.  Plaintiffs will seek leave to amend this Complaint to allege the true names and capacities of DOES 1 through 10 when their names are ascertained.  Plaintiffs are informed and believe, and based thereon allege, that each of the DOE Defendants is in some manner liable to Plaintiffs for the events and actions alleged herein.  All named Defendants, and DOES 1 through 10, will be collectively referred to as "Defendants."

Thomas D. Rutledge
Attorney-at-Law
3555 Fifth Avenue, First Floor
San Diego, California 92103
Telephone: (619) 886-7224
Facsimile: (619) 259-5455

22.     Plaintiffs are informed and believe, and based thereon allege, that at all times, each Defendant was acting as an agent, joint venturer, and/or alter ego for each of the other Defendants and each were co-conspirators with respect to the acts and the wrongful conduct alleged herein so that each is responsible for the acts of the other in connection with the conspiracy in such wrongful acts in connection with the other Defendants.

23.     Plaintiffs are informed and believe, and upon that basis allege, that each Defendant was acting partly within and partly without the scope and course of their employment, and was acting with the knowledge, permission, consent, and ratification of every other Defendant.

## GENERAL ALLEGATIONS

### Defendants' Business

24.     Defendant WADDELL & REED, is generally in the business of selling a variety of investment vehicles (e.g., whole life insurance, mutual funds, etc.) through its sales force.

25.     Defendant does business on a nationwide basis.

26.     Upon information and belief, at all times relevant Defendants employ or have employed more than 2000 so-called independent contractor Advisors nationwide, about 500 of which are or were Advisors in California during the statutory period.

27.     Defendants have been in business for more than ten years.

28.     On information and belief, at all relevant times, Defendants owned, controlled, operated, and/or has been controlled by or under common control by another Defendant that owned controlled or operated a business or establishment that employed Plaintiffs YOUNG and TAYLOR, other employees, and members of the general public within the meaning of Industrial Welfare Commission ("IWC") Order No. 4-2001, 8 Cal. Code of Regulations § 11050 ("Wage Order 4-2001), California Labor Code, various employment-tax regulations and code including but not limited to the California Unemployment Insurance Code.   On further information and belief, at all times relevant herein, Defendants have been an "employer" of Advisors and Plaintiffs within the meaning of the FLSA, as it has exercised control over the nature and structure of the employment relationship or economic control over the relationship between Defendants and each of the Plaintiffs and Advisors working throughout the United States.

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

**Defendants' Hiring Practices**

29.     On or about November 1, 2005, Plaintiffs commenced working for Defendants at the Waddell & Reed office in San Diego, California as Advisors.

30.     During all times relevant, Plaintiffs were considered Advisors of Defendants.

31.     Defendants have an aggressive team of agents that solicit people to work for them as Advisors, often inducing them to join the company with the promise of providing them training, resources, and unlimited income potential.

32.     Defendants recruit its Advisors using claims that a career with Waddell & Reed will provide them the opportunity to be one's own boss.  Advisors, however, quickly discover after they sign on with Defendants that WADDELL & REED imposes strict sales requirements and engages in stringent monitoring practices that belie its promises that Advisors enjoy independence and freedom. Moreover, despite all the work they must complete in order to meet Defendant WADDELL & REED's numerous performance requirements, Advisors receive no base salary at all--working exclusively on a commission basis with no draws or advances

33.     On information and belief, Plaintiffs YOUNG and TAYLOR and other Advisors complete an employment application as part of the hiring process with Defendant.

34.     Once hired, Defendant WADDELL & REED, classify Advisors as independent contractors.

35.     The working relationship Advisors, including Plaintiffs YOUNG and TAYLOR, had with Defendants was open-ended, thus continuous in nature.  It was not set for a finite period, or for a per-project basis.

36.     Advisors routinely perform labor for Defendants requiring no special skills or knowledge.  In fact, Defendants routinely recruit persons from other career fields and other entry-level individuals to work for Defendants as Advisors.

37.     Defendants require Plaintiffs YOUNG and TAYLOR and other Advisors to execute the "Professional Career Agreement" ("Agreement") to commence the training and work periods. The purpose of the Agreement is to list for the Advisor, the basic terms governing the association with WADDELL & REED, INC. and Waddell & Reed Affiliates ("W&R Affiliates") including

Thomas D. Rutledge
Attorney-at-Law
3555 Fifth Avenue, First Floor
San Diego, California 92103
Telephone: (619) 886-7224
Facsimile: (619) 259-5455

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Defendants.  W&R Affiliates is defined as any company controlling, controlled by and/or under common control with WADDELL & REED, INC. with which the Advisor now or hereafter during the term of the Agreement may be associated, registered or licensed for insurance purposes. Among things, the Agreement states it may be terminated by either Defendants or the Advisor upon giving reasonable notice to the other.  The Agreement further may be terminated upon the Advisor's failure to meet any minimum earnings or sales production requirements which may be established or modified by Defendants.  A true and correct copy of the Professional Career Agreement Plaintiff YOUNG signed is attached hereto and marked as Exhibit "A," which terms are incorporated by reference.

**Defendants Limit Advisors From Offering Services To Multiple Entities**

38.     Once hired, Advisors including Plaintiffs YOUNG and TAYLOR are limited by Defendants from offering their services to other entities. [Source: Agreement and "Compliance Information for Financial Advisors Rev 7/05" ("Compliance Information")]

39.     Defendants forbid Advisors from working with another broker-dealer, prohibit Advisors from being registered with broker-dealer or investment advisor other than Defendants, and prohibit Advisors from engaging in or participating in the sale of or making any recommendations regarding viatical settlement contracts and promissory notes. [Source: Compliance Information]

40.     As a condition of working with Defendants, Defendants require Advisors to sell only for, and under the name of Waddell & Reed, Inc.  Defendants prohibit Advisors from selling securities for any other firm. Advisors may not offer, or appear to offer, securities under any name other than Waddell & Reed, Inc.  For example, Advisors may not offer, nor appear to offer, securities under the Advisors' own name (e.g. John Doe Financial Services) or any other entity besides Waddell & Reed, Inc.  When discussing the securities that an Advisor can sell, Advisors must identify themselves as a financial advisor (or other approved title) of Waddell & Reed, Inc. Defendants inform Advisors that the client must clearly understand that all of the Advisors' securities solicitations and sales are supervised and handled by Waddell & Reed, Inc. . [Source: Compliance Information]

///

Thomas D. Rutledge
Attorney-at-Law
3555 Fifth Avenue, First Floor
San Diego, California 92103
Telephone: (619) 886-7224
Facsimile: (619) 259-5455

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Thomas D. Rutledge
Attorney-at-Law
3555 Fifth Avenue, First Floor
San Diego, California 92103
Telephone: (619) 886-7224
Facsimile: (619) 259-5455

41.     A further condition of working with Waddell & Reed is that Advisors may sell only those securities which are authorized by Waddell & Reed, Inc. [Source: Agreement and Compliance Information]

42.     Defendants further prohibit Advisors from receiving any compensation relating to securities or investment advisory activities, except directly from WADDELL & REED and from sharing commissions or fees with any person, without the prior written approval of WADDELL & REED.  Approval may not be granted if Defendants determine such activity is not in compliance with Defendants' policies.   [Source: Compliance Information]

43.     Advisors, including Plaintiffs YOUNG and TAYLOR, are required as a condition of working for Defendants, to agree to not be licensed as an agent for any life insurance company or health and accident insurance company and not to serve as an agent of any insurance agency for such companies, except WADDELL & REED Affiliate and any such companies Defendants may designate. [Source: Agreement]

44.     Advisors further may not offer legal, mortgage/real estate or other advice beyond that authorized by Waddell & Reed. [Source: Compliance Information]

**Advisors Perform Services Integral To Defendants' Business Operations**

45.     The primary job of Advisors is to perform the job Defendants are in the business for – to offer and sell financial products (e.g., WADDELL & REED mutual funds, WADDELL & REED annuities, WADDELL & REED life insurance, etc.) to existing and prospective customers.[Source: Waddell & Reed Financial Inc. 10-k, February 27, 2009]

46.     All Advisors who work for Defendants, including Plaintiffs YOUNG and TAYLOR, perform services integral to Defendants' business operations.

47.     All Advisors working for Defendants, including Plaintiffs YOUNG and TAYLOR, have and do perform the same basic job requirements of selling financial products.  Advisors including Plaintiffs YOUNG and TAYLOR do not perform duties directly related to the management or general business operations of Defendants or its customers.

///

///

- 10 -

48.     Defendants hire Advisors to locate prospective clients in order to sell WADDELL & REED's investment products to them.  Advisors, including Plaintiffs YOUNG and TAYLOR, are required to: target prospective clients and market financial products to them; evaluate clients and prospective clients' financial situation and identify investment objectives through the WADDELL & REED financial planning process; and recommend financial products to clients and prospective clients and help clients purchase the recommended financial products. [Source: Waddell & Reed website]

49.     Advisors, including Plaintiffs YOUNG and TAYLOR, are assigned clients by Defendants and required to additionally prospect clients themselves.  Pursuant to Defendants' rules, Advisors must surrender to Defendants any and all client files, client lists, and client data upon termination of the work-relationship as Defendants claim this is the sole property of Defendants. [Source: Agreement and Compliance Information]

**Defendants Exert A Great Degree Of Control Over Advisors And Their Work Including The Manner And Method Of Selling Financial Products, Communications With Clients And Prospective Clients, And Determining Whether A Sale May Be Finalized**

50.     Defendants exercise the right to direct and control the manner and means by which Advisors, including Plaintiffs YOUNG and TAYLOR, perform services.

51.     Advisors have little, if any, independent control, judgment or discretion working for Defendants.

52.     Defendants require all Advisors to follow Defendants' "very objective, comprehensive and thoughtful seven step process in developing a thorough and professional financial analysis and plan." [Source: Waddell Reed website; EDD Obstructed Claim Report]

53.     The Agreement Plaintiffs YOUNG and TAYLOR and other Advisors sign requires Advisors to follow all of Defendants' rules and procedures in offering products and services and in using Defendants' office facilities.  Defendants further proscribe rules of conduct that Advisors must abide by.

54.     Advisors must report to an office owned, operated, and equipped by Defendants WADDELL & REED located in various cities to serve WADDELL & REED's customers.

///

Thomas D. Rutledge
Attorney-at-Law
3555 Fifth Avenue, First Floor
San Diego, California 92103
Telephone: (619) 886-7224
Facsimile: (619) 259-5455

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

55.     On information and belief, all Advisors working for Defendants, including Plaintiffs YOUNG and TAYLOR, customarily and regularly work greater than 50% of their time at Defendants' place of business selling tangible or intangible items or obtaining orders or contracts for products or services. Advisors complete paperwork and contact clients relying on telephones, offices, and fax machines provided by WADDELL & REED.  Advisors moreover spend the majority of their time at Defendants' office making telephone calls and meeting with clients or prospective clients.

56.     Even when Advisors wish to set up their own office, an Advisor's office is not a business organization and operation independent of Defendants' business.  Advisors are compelled to follow the same polices and procedures set by Defendants for Defendants' registered offices. [Source: Agreement; Waddell & Reed website]

57.     Defendants require Advisors to work a specified number of hours and generally adhere to a schedule proposed by Defendants.

58.     Pursuant to Defendant WADDELL & REED's policies, Advisors, must offer WADDELL & REED's products to customers before offering non-WADDELL & REED products. [Source: Compliance Information]

59.     Defendants provide Advisors with training regarding approved sales strategies and products.  [Source: Waddell & Reed Website; Compliance Information]

60.     Defendants encourage Advisors to work at Defendants' offices.  In fact, Advisors are encouraged to bring clients into the office whenever an in-person meeting is required, which is often.

61.     Though Advisors are allowed to leave the office to meet with prospective clients, they must explain their activities outside the office, are expected to return to the office at the end of the day, and are sometimes accompanied by supervisors who monitor their performance in and outside of the office.

62.     Advisors who do not report to the office because of illness or vacation must call in to justify their absence to their supervisors.

63.     Defendants do not permit Advisors to make any arrangement or representation on

Thomas D. Rutledge
Attorney-at-Law
3555 Fifth Avenue, First Floor
San Diego, California 92103
Telephone: (619) 886-7224
Facsimile: (619) 259-5455

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Thomas D. Rutledge
Attorney-at-Law
3555 Fifth Avenue, First Floor
San Diego, California 92103
Telephone: (619) 886-7224
Facsimile: (619) 259-5455

1  behalf of Defendants. Defendants further do not provide Advisors with any authority to waive, alter

2  or change any term or provision of any sales material, policy, form, application or rider for any

3  security or insurance policy offered by or through Defendants. [Source: Agreement; Compliance

4  Information]

5    64. Defendants, not Advisors, set job performance and sales goals.

6    65. WADDELL & REED establishes detailed quotas for Advisors concerning many

7  aspects of their job--including, among other things, the number of newly scheduled appointments,

8  appointments scheduled in advance, daily appointments, and many other requirements designed to

9  help Advisors make quota.

10    66. In order for Advisors to keep their jobs they must meet specific goals set by

11  Defendants' corporate managers. Advisors who fail to meet the requirements imposed by

12  WADDELL & REED are placed on probation and ultimately fired if they fail to meet their

13  requirements. Pursuant to the Agreement, failure by an Advisor to meet any minimum earnings or

14  sales production requirements established or modified by Defendants will result in a termination of

15  the Agreement and the work relationship between the Advisor and Defendants.

16    67. Defendants inform Advisors that an Advisor's failure to comply with the company

17  policies, procedures and guidelines has "severe consequences." Disciplinary action undertaken by

18  Defendants against its Advisors include warnings, reprimands, commission charge-backs, fines,

19  restrictions on business activities, suspension, termination and other disciplinary action that "in the

20  opinion of management, is consistent with the infraction." Defendants record infractions in the

21  Advisors' "Associated Person's" file. [Source: Compliance Information]

22    68. Defendants require Advisors to attend meetings in order to stay in good standing with

23  Defendants. Failure to attend these meetings may result in disciplinary action against Advisors

24  including termination. [Source: Compliance Information]

25    69. Defendants supervise all aspects of Advisors' work and engage in periodic

26  performance reviews of all Advisors. [Source: Compliance Information]

27    70. Defendants prohibit Advisors from using any materials not reviewed and approved by

28  Defendants. [Source: Compliance Information]

- 13 -
FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

71.     A copy of each item of correspondence sent to a client or a prospect that relates to Defendants' business must be provided to the Division Manager or other authorized principal for review and transmission approval.  [Source: Compliance Information]

72.     Advisors must additionally provide the Division Manager or authorized principal a list of the names and addresses of each person the Advisor wishes the proposed correspondence to go to along with the expected date of use. [Source: Compliance Information]

73.     Defendants prohibit Advisors from using any e-mail system other than Defendants' e-mail system to conduct business.  [Source: Compliance Information]

74.     All e-mail correspondence and most other correspondence must comply with "Waddell & Reed's Communication Standards" and other company requirements.  [Source: Compliance Information including Communication Standards]

75.     Defendants proscribe the look and formatting of email and other correspondence that Advisors may send.  [Source: Compliance Information]

76.     Defendants inform Advisors that all incoming and outgoing messages are the company's records and are subject to monitoring by Defendants.  [Source: Compliance Information]

77.     Disciplinary actions will result if Advisors do not comply with the "Waddell & Reed Communication Standards and other company correspondence policies. [Source: Compliance Information including Communication Standards]

78.     All advertisements and sales literature must be supplied by Defendants' home office or reviewed and approved in writing by Defendants before an Advisor's can use the material. [Source: Compliance Information including Communication Standards]

79.     Defendants control the contents of Advisors' radio interviews and radio call-in programs.  Defendants require Advisors to comply with all of its Communication Standards; require Advisors to identify themselves by their title and affiliation with Waddell & Reed.  If the Advisor will be addressing insurance topics, Defendants further require the Advisor to make it clear that they are engaged in business activities as an agent or representative of insurance companies that Defendants have made sales arrangements.  [Source: Compliance Information]

Thomas D. Rutledge
Attorney-at-Law
3555 Fifth Avenue, First Floor
San Diego, California 92103
Telephone: (619) 886-7224
Facsimile: (619) 259-5455

80.     Defendants require that all advice Advisors provide be routed through and approved by a supervisor (an employee of Waddell & Reed) before going to clients. [Source: Compliance Information]

81.     Defendants have established guidelines and limitations regarding any "bio" an Advisor may prepare. [Source: Compliance Information]

82.     Any Advisor who wishes to have their own "home page" or web site are encouraged to utilize Defendants' program. Furthermore, Defendants require Advisors who have a home page/web site to provide a link to Waddell & Reed's corporate home page. Defendants prohibit the use of links to other sites on any home page/web site. Advisors moreover may use only their Waddell & Reed e-mail address and no other e-mail address on their home page/web site. [Source: Compliance Information]

83.     Defendants require that a copy of each item of incoming correspondence Advisors receive relating to Defendants' securities business be promptly submitted to an authorized principal. All mail addressed to a Waddell & Reed office, even if it is addressed to an Advisor personally, is opened and reviewed by the Division Manager or authorized principal. [Source: Compliance Information]

84.     All Advisors' incoming e-mails are automatically directed to the Division Manger or authorized principal. [Source: Compliance Information]

85.     All financial plans and sales illustrations an Advisor develops must be approved by an appropriate principal before they can be used. [Source: Compliance Information]

86.     Defendants prohibit Advisors from creating and/or printing on their own business cards and stationary. All business cards and stationary must be ordered through Defendants' corporate stationary program and must possess the WADDELL & REED logo on it. [Source: Compliance Information; Waddell & Reed website]

87.     Defendants regulate Advisors' sales presentations and the products they may attempt to sell beyond the regulations set by federal and state law and NASD. All Sales presentation and promotional material have the WADDELL & REED logo on it. [Source: Compliance Information]

///

Thomas D. Rutledge
Attorney-at-Law
3555 Fifth Avenue, First Floor
San Diego, California 92103
Telephone: (619) 886-7224
Facsimile: (619) 259-5455

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

88.     All applications and other transaction requests involving a purchase, exchange or redemptions must be reviewed and approved by Defendants.  [Source: Compliance Information]

89.     Defendants require that all client files, client data, forms, prospectuses, transaction-related documents, manuals and any property pertaining to Waddell & Reed business must be returned to Defendants upon termination of association with Defendants. [Source: Compliance Information; Agreement]

**Defendants Supply The Instrumentalities, Tools, And Place For Advisors To Work**

90.     Defendants pride themselves on offering a high level of Advisor support, education, tools, processes and programs necessary for Advisor success and seamless transition to working with Defendants.  In fact, on its website it details for prospective Advisors all the tools its provides its Advisors with including those listed below.

91.     Defendants provide Advisors with offices to work out of that it operates and equips. The offices come equipped with fax machines, copiers, and telephones.

92.     Defendants provide the following resources to Advisors through its approved vendors regardless if Advisors join an existing office or establishes their own: interior/exterior signage and building directory support, business cards, stationary, yellow pages placement services.

93.     Defendants provide Advisors with an authorized e-mail system and various authorized computer applications and software.  Advisors are provided with a computer networking service and personal computer setup support is provided through Defendants' help desk.

94.     Defendants' Advisor Business Technology & Strategy business unit focuses on making Advisors more productive by providing distinct business toolsets from initial planning through implementation.   Through this toolset, Defendants deliver product strategy enhancements, recommend and communicate necessary service model infrastructures, research for Advisors opportunities for enhanced efficiencies in the business process, applications and tracking, and deploy and support technology tools and resources.

95.     Advisors are further provided by Defendants with the following tools to assist with sales and product strategies: Financial Advisors Answer Team, Sales Support (including investment product expertise and training, point of sale support, client and prospecting events, liaisons to

Thomas D. Rutledge
Attorney-at-Law
3555 Fifth Avenue, First Floor
San Diego, California 92103
Telephone: (619) 886-7224
Facsimile:  (619) 259-5455

- 16 -

Thomas D. Rutledge
Attorney-at-Law
3555 Fifth Avenue, First Floor
San Diego, California 92103
Telephone: (619) 886-7224
Facsimile: (619) 259-5455

1  investment management division, key practice management steps); Financial Planning (training and
2  development on planning process and software, dedicated plan support, resources and marketing
3  materials), and Waddell & Reed software (including eSuite/ESource – a Waddell & Reed advisor
4  portal, and various other Waddell & Reed specific software and applications to assist with sales and
5  productivity), seminar materials and literature.

6      96.    Defendants market themselves to Advisors as providing exceptional and accessible
7  sales support staff and financial planning support professionals.  For example, Defendants not only
8  provide Advisors with planning tools and technology, but it supplements this with staff dedicated to
9  providing assistance with sales, prospecting, training, implementation, and overall planning.
10  Defendants provide Advisors with materials and literature concerning marketing, case analysis,
11  client consultation, referral networking, annual reviews, plan type recommendations, presentation,
12  and closing sale techniques.

13      97.    To keep Advisors focused on selling, Defendants provide Advisors with dedicated
14  staff and tools to assist them in the area of brokerage services, compliance, licensing, field services,
15  IT, and legal assistance.

16      98.    Defendants furthermore supply Advisors with marketing tools, materials, and
17  strategies.

18      99.    Defendants' "Company Store" offers Advisors ready access to an extensive library of
19  pre-approved marketing tools, invitation programs, and sales literature.

20      100.    Defendants supply Advisors who wish to present seminars or provide presentations
21  with a collection of pre-approved presentations and presentation materials.

22      101.    Defendants additionally make accessible to Advisors various other tools including
23  lead and referral programs, investment commentaries designed to educate clients and prospects, and
24  email marketing services.

25  **Advisors' Opportunities For Profit And Loss And Investment In Materials Required By The**
26  **Job**

27      102.    Advisors, including Plaintiffs YOUNG and TAYLOR, are paid on a purely
28  commission basis and do not receive wage payments.

Thomas D. Rutledge
Attorney-at-Law
3555 Fifth Avenue, First Floor
San Diego, California 92103
Telephone: (619) 886-7224
Facsimile: (619) 259-5455

103.   Defendants have not, and do not pay their Advisors, including Plaintiffs YOUNG and TAYLOR, minimum wages for all hours suffered or permitted to work.

104.   Defendants have not, and do not pay their Advisors, including Plaintiffs YOUNG and TAYLOR, overtime pay for the hours worked in excess of forty (40) hours in a workweek, as required by law.

105.   Defendants also have not paid and do not pay Advisors working in California, including Plaintiffs YOUNG and TAYLOR, any overtime pay for the hours worked in excess of eight (8) hours in a workday as required by California law.

106.   Instead, Defendants treat Advisors, including Plaintiffs YOUNG and TAYLOR, as independent contractors and have paid, and pay Advisors only a commission.

107.   Advisors do not set their level of compensation, rather, Advisors receive commissions pursuant to the uniform commission schedules developed and modified solely by Defendants.

108.   Defendants' policy is to not advance commissions.

109.   Defendants pay Advisors commissions on a semi-monthly basis, payable pursuant to its commission schedules.

110.   Defendants unilaterally set the terms and conditions of when commissions vest. Defendants, for example, unilaterally establish that charged-back commissions become immediately due and payable by Advisors and that Advisors must be in good standing with Defendants on the date when the final payment is due.

111.   Defendants reserve the right to modify the commission and income programs and withhold or charge back commissions at its sole discretion.

112.   Defendants charge Advisors, including Plaintiffs YOUNG and TAYLOR, for Fed-Ex charges, long distance phone calls, copies, a monthly software fee, stationary and business cards.

113.   On information and belief, no Advisor makes any capital investment in Defendants' business beyond simple tools.

///

///

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

**Wage And Hour Policies And Practices**

114.   Plaintiffs YOUNG and TAYLOR and other Advisors are paid on a commission basis and receive no base salary.

115.   Before working for Defendants, Plaintiffs YOUNG and many other Advisors undergo an extensive training seminar put on by WADDELL & REED employees during which time Advisors receive no pay for the hours "in training."

116.   Plaintiffs YOUNG and TAYLOR and other Advisors are not paid on an hourly basis nor paid a draw against future earned commissions.

117.   FLSA Plaintiffs YOUNG and TAYLOR, like other similar Advisors, regularly worked in excess of forty (40) hours in a workweek and have not been paid minimum and overtime wages for this work.

118.   California Plaintiffs YOUNG and TAYLOR, like other similar Advisors working in California regularly worked in excess of eight (8) hours in a workday and have not been paid minimum and overtime wages for this work.

119.   California Plaintiffs YOUNG and TAYLOR like other Advisors working in California were not paid meal premiums as required under California law.

120.   On or about December 31, 2007, Defendant WADDELL & REED terminated Plaintiff YOUNG's employment with Defendants and he was not provided a final paycheck with all wages and commissions due and owing.  Since his termination, YOUNG has not been paid for his unpaid wages or for earned commissions.

121.   Upon Plaintiff TAYLOR's termination in January 2008, Defendants did not pay her all wages and commissions due and owing.  Since her termination, TAYLOR has not been paid her unpaid wages.

122.   On information and belief, Defendants do not provide any Advisor with all wages and commissions due and owing during employment and upon termination of employment.

123.   In 2007, Plaintiffs YOUNG and TAYLOR earned less than minimum wage for the hours they worked.

///

Thomas D. Rutledge
Attorney-at-Law
3555 Fifth Avenue, First Floor
San Diego, California 92103
Telephone: (619) 886-7224
Facsimile: (619) 259-5455

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Thomas D. Rutledge
Attorney-at-Law
3555 Fifth Avenue, First Floor
San Diego, California 92103
Telephone: (619) 886-7224
Facsimile: (619) 259-5455

124.   In 2006, Plaintiffs YOUNG and TAYLOR earned less than minimum wage for the hours they worked.

125.   In 2005, Plaintiffs YOUNG and TAYLOR were only "in training" (which was taught and provided by WADDELL & REED) for WADDELL & REED and WADDELL & REED did not pay Plaintiffs YOUNG and TAYLOR for this work time although they required them to attend training before he could begin working for WADDELL & REED.  Other Advisors were similarly handled for their "in training" period.

126.   In 2005, Plaintiff TAYLOR and YOUNG did not earn minimum wage for all hours they worked.

127.   Plaintiffs YOUNG and TAYLOR and other Advisors are issued 1099s for their work and are classified as "independent contractor," despite the significant amount of control Defendants exercised over them.

128.   Plaintiffs YOUNG and TAYLOR and other Advisors are not provided wage and earning statements on a monthly or bi-weekly basis.

129.   Advisors including Plaintiffs YOUNG and TAYLOR have been required to pay certain business expenses approved through Defendants' policies in addition to employment taxes, all in order to comply with Defendants' policies, without any reimbursement of these expenses.

## COLLECTIVE ACTION ALLEGATIONS

130.   Plaintiffs YOUNG and TAYLOR ("FLSA" Plaintiffs) bring all federal causes of action as an opt-in collective action pursuant 29 U.S.C. § 216(b), on behalf of

> All persons engaged primarily in, or training to be engaged in, the business of inside-sales of financial products and securities for Defendants including but not limited to individuals holding the positions of "Advisor," "Financial Sales," and/or "Financial Advisor" and classified, at any time from three years before the filing of this Complaint to entry of judgment in this action, as "independent contractors ("FLSA Advisors" )

131.   For purposes related to this action, including notice, the names and addresses of Advisors who are FLSA Advisors are readily available from Defendants. Discovery may reveal additional titles and employees should be included in the collective action.

132.   At all times relevant, FLSA Plaintiffs and the FLSA Advisors have been similarly situated, have had substantially similar job requirements and pay provisions, and have been subject

- 20 -

to Defendants' common policies of:  (a) willfully misclassifying Advisors as independent

contractors exempt from minimum wage and overtime requirements even though Defendants knew

or should have known that Advisors are not exempt, (b) willfully failing and refusing to pay

Advisors minimum wages for their work as required by 29 U.S.C. § 206, and (c) failing and refusing

to pay Advisors time and a half rates for work in excess of forty (40) hours per week, as required by

29 U.S.C. § 207.

## CLASS ACTION ALLEGATIONS

133.   Plaintiffs bring this action on their own behalf and on behalf of:

> All persons engaged primarily in, or training to be engaged in, the business of inside-sales of financial products and securities for Defendants in the state of California including but not limited to individuals holding the positions of "Advisor," "Financial Sales," and/or "Financial Advisor" and classified as "independent contractors" at any time from four years before the filing of this Complaint to entry of judgment in this action." ("California Class").

Discovery may reveal additional titles and employees should be included in the Class.

134.   For purposes related to this action, including notice, the names and addresses of

California Class members are readily available from Defendants.

135.   The proposed California Class is so numerous that joinder of all members of the

California Class is impracticable.  While the precise number of California Class members has not

been determined at this time, upon information and belief, hundreds of people are or have worked

for Defendants as Advisors in California and classified as independent contractors during the four

years before the filing of this Complaint.

136.   At all times relevant to this action, California Plaintiffs and California Class

members have been similarly situated, have had substantially similar job requirements and pay

provisions, and have been subject to Defendant WADDELL & REED's policies of (a) willfully

misclassifying Advisors as independent contractors exempt from wage and hour protections,  (b)

willfully refusing and failing to pay Advisors minimum and overtime wages for their work as

required by law, (c) failing to provide Advisors meal periods and meal premiums, (d) failing to pay

Advisors in a timely manner, (e) failing to provide Advisors itemized wage and earning statements,

and (f) failing to reimburse Advisors for business expenses.

///

Thomas D. Rutledge
Attorney-at-Law
3555 Fifth Avenue, First Floor
San Diego, California 92103
Telephone: (619) 886-7224
Facsimile: (619) 259-5455

Thomas D. Rutledge
Attorney-at-Law
3555 Fifth Avenue, First Floor
San Diego, California 92103
Telephone: (619) 886-7224
Facsimile: (619) 259-5455

137.    There are questions of law and fact common to California Plaintiffs and the California Class that predominate over any questions affecting only individual members of the Class.  These common questions of law and fact may include, without limitation:

(a) Whether Defendants have violated and continues to violate California law by misclassifying Advisors as independent contractors;

(b) Whether Defendants have violated and continues to violate California Labor Code §§ 201, 202, 204 by failing to pay timely wages during employment and upon separation to its Advisors;

(c) Whether Defendants have violated and continues to violate California Labor Code §§ 204, 1182.12, 1194, 1197, and Wage Order No. 4-2001 § 4(A) by failing to pay minimum wages to Advisors;

(d) Whether Defendants have violated and continues to violate California Labor Code §§ 510, 1194, and California Wage Order No. 4-2001 § 3(A) by failing to pay overtime compensation to Advisors who worked in excess of forty (40) hours per week and/or eight (8) hours per day;

(e) Whether Defendants have violated and continues to violate California Labor Code §§ 226.7 and 512 and Wage Order No. 4 § 11(A) by failing to provide Advisors meal periods and meal premiums;

(f) Whether Defendants have violated and continues to violate California Labor Code § 2802 by failing to reimburse Advisors for expenses incurred to perform their job;

(g) Whether Defendants have violated and continues to violate California Labor Code § 226 by failing to provide Advisors with itemized wage and earning statements;

(h) Whether Defendants have violated and continues to violate California Business and Professions Code § 17200 by failing to pay minimum wage, overtime compensation, failing to provide Advisors with meal periods, and failing to reimburse Advisors for expenses incurred to perform their job and failing to provide employment benefits including but not limited to paying employment payroll taxes.

138.    California Plaintiffs' claims are typical of the claims of the California Class.

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Thomas D. Rutledge
Attorney-at-Law
3555 Fifth Avenue, First Floor
San Diego, California 92103
Telephone: (619) 886-7224
Facsimile: (619) 259-5455

1  California Plaintiff and all members of the California Class perform similar duties, which are

2  prescribed and closely monitored by Defendants. Like all California Class members, Califrnia

3  Plaintiffs have been injured by Defendants common course of conduct of, among other things,

4  denying its Advisors lawful minimum wages, overtime compensation, meal periods, unpaid business

5  expenses, and are entitled to recover damages and associated relief.

6        139.   California Plaintiffs will fairly and adequately represent and protect California Class

7  members' interest and California Plaintiffs have retained counsel who is competent and experienced

8  in the prosecution of class action wage and hour cases.

9        140.   Due to the basic uniformity of the California Class members' duties and

10  responsibilities, a class action is superior to other available methods for the fair and efficient

11  adjudication of this controversy.  Adjudication of individual litigation claims may be prohibitively

12  expensive for individual California Class members, virtually all of whom lack the financial

13  resources to vigorously prosecute a lawsuit against Defendants. Moreover, separate adjudication of

14  potentially hundreds of individual actions would impose significant burdens on the resources of both

15  this Court and the public.  Finally, the prosecution of separate actions would create the risk of

16  inconsistent and/or varying adjudications with respect to individual California Class members,

17  establishing incomparable standards of conduct for Defendants, and impairing the rights of the

18  California Class members by disposing of their interests through actions to which they are not

19  parties.

20  **FIRST CAUSE OF ACTION**

21  **Failure to Pay Required Minimum Wages in Violation of FLSA, 29 U.S.C. § 206**

22  (Individual and Collective Action Claim Against All Defendants on behalf of Plaintiffs and FLSA

23  Advisors)

24        141.   Plaintiffs re-allege and incorporate by reference the allegations in the foregoing

25  paragraphs as though set forth herein.

26        142.   At all times relevant, Defendants employed and continues to employ Advisors as

27  "employee[s]" within the meaning of FLSA, 29 U.S.C. § 203, as indicated by the substantial level of

28  control that Defendants wielded and continues to wield over its Advisors.  However, Defendants

- 23 -

1   have willfully and intentionally engaged in a widespread pattern and practice of violating the

2   provisions of the FLSA by misclassifying FLSA Advisors as independent contractors and thus have

3   willfully and intentionally failed to pay FLSA Advisors minimum wage as required by 29 U.S.C. §

4   206.  Defendants engaged in this practice throughout the three-year statute of limitations that applies

5   to this action pursuant to 29 U.S.C. § 255.

6        143.    Therefore, at all times relevant, Defendants operated under and continue to operate

7   under a common policy and plan of willfully, regularly, and repeatedly failing and refusing to pay

8   Advisors minimum compensation at the rates required by the FLSA, 29 U.S.C. § 206.  Through this

9   unlawful course of conduct, Defendants have deprived FLSA Plaintiffs and FLSA Advisors of the

10  hourly wages provided by the FLSA, 29 U.S.C. § 206(a)(1), currently $7.25 per hour.

11       144.    As alleged herein, Defendants do not pay Plaintiffs and FLSA Advisors a regular

12  wage, instead it pays them solely commissions which does not equate at least minimum wage for all

13  hours FLSA Advisors are suffered or permitted to work.  As a result, Defendants have failed to

14  comply with 29 U.S.C. § 206 in that it fails to timely pay at least minimum wages for all hours

15  worked to the FLSA Advisors.

16       145.    As a result of the unlawful acts of Defendants, FLSA Plaintiffs and all FLSA

17  Advisors who opt-in are entitled to recovery in the amounts of their respective unpaid minimum

18  wages, liquidated damages; prejudgment interest, attorneys' fees and costs, and any other relief the

19  Court deems just and proper pursuant to FLSA, 29 U.S.C. § 216(b).

20       WHREFORE, Plaintiffs pray for relief as hereinafter requested.

21                        **SECOND CAUSE OF ACTION**

22      **Failure to Pay Required Overtime Wages in Violation of FLSA, 29 U.S.C. § 207;**

23                             **29 CFR §778.106**

24  **(Individual and Collective Action Claim** Against All Defendants on behalf of Plaintiffs and FLSA

25                                  Advisors)

26       146.    Plaintiffs re-allege and incorporate by reference the allegations in the foregoing

27  paragraphs as though set forth herein.

28       147.    At all times relevant, Defendants employed and continues to employ Advisors as

Thomas D. Rutledge
Attorney-at-Law
3555 Fifth Avenue, First Floor
San Diego, California 92103
Telephone: (619) 886-7224
Facsimile:  (619) 259-5455

- 24 -

"employee[s]" within the meaning of FLSA, 29 U.S.C. § 203, as indicated by the substantial level of control that Defendants wielded and continues to wield over its Advisors.  However, Defendants have willfully and intentionally engaged in a widespread pattern and practice of violating the provisions of the FLSA by misclassifying FLSA Advisors as independent contractors and thus have willfully and intentionally failed to pay FLSA Advisors overtime wages as required by 29 U.S.C. § 207.  Defendants engaged in this practice throughout the three-year statute of limitations that applies to this action pursuant to 29 U.S.C. § 255.

148.    Therefore, at all times relevant, Defendants operated under and continue to operate under a common policy and plan of willfully, regularly, and repeatedly failing and refusing to pay Advisors overtime compensation at the rates required by the FLSA, 29 U.S.C. § 207 for work performed in excess of forty (40) hours per workweek to which they were and are entitled.

149.    Pursuant to 29 CFR § 778.106, Defendants are required to pay overtime compensation earned in a particular workweek on the regular pay day for the period in which such workweek ends.  When the correct overtime compensation cannot be calculated until after the regular payday, then the FLSA requires that the overtime payment be made as soon after the regular payday as is practicable, but no later than the next pay day after the computation can be made.

150.    As alleged herein, Defendants do not pay Plaintiffs and FLSA Advisors a regular wage, instead it pays them solely commissions.  As a result, Defendants have failed to comply with 29 U.S.C. § 207(a)(1) and 29 CFR § 778.106 in that it fails to timely pay overtime wages to the FLSA Advisors.

151.    At all times relevant, Defendants have also operated under and continues to operate under a common policy and plan of willfully, regularly, and repeatedly failing and refusing to pay overtime compensation at the rates required by the FLSA, 29 U.S.C. § 207.

152.    As a result of the unlawful acts of Defendants, FLSA Plaintiffs and all FLSA Advisors who opt-in are entitled to recovery in the amounts of their respective unpaid overtime wages, liquidated damages; prejudgment interest, attorneys' fees and costs, and any other relief the Court deems just and proper pursuant to FLSA, 29 U.S.C. § 216(b).

WHEREFORE, Plaintiffs pray for relief as hereinafter requested.

Thomas D. Rutledge
Attorney-at-Law
3555 Fifth Avenue, First Floor
San Diego, California 92103
Telephone: (619) 886-7224
Facsimile: (619) 259-5455

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Thomas D. Rutledge
Attorney-at-Law
3555 Fifth Avenue, First Floor
San Diego, California 92103
Telephone: (619) 886-7224
Facsimile: (619) 259-5455

### THIRD CAUSE OF ACTION

**Failure to Pay Timely Wages and Fringe Benefits During Employment and**

**Upon Separation of Employment**

**California Labor Code §§ 201, 202 203, 204, 218.5, 218.6)**

(Individual and California Class Claim Against All Defendants on behalf of Plaintiffs and California Class)

153.    Plaintiffs re-allege and incorporate by reference the allegations in the foregoing paragraphs as though set forth herein.

154.    Pursuant to Labor Code § 201, "If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately."

155.    Pursuant to Labor Code § 202, "If an employee not having a written contract for a definite period quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting."

156.    Labor Code § 203 provides, in pertinent part: "If an employer willfully fails to pay, without abatement or reduction, ... any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefore is commenced; but the wages shall not continue for more than 30 days. ..."

157.    Pursuant to Labor Code § 204, "all wages ... earned by any person in any employment are due and payable twice during each calendar month, on days designated in advance by the employer as the regular paydays."

158.    Pursuant to Labor Code §§ 218.5 and 218.6, an action may be brought for the nonpayment of wages and fringe benefits.

159.    Plaintiffs on behalf of themselves and California Class members allege they were not properly paid all wages pursuant to the requirements of Labor Code §§ 201, 202, and 204 and provided with all fringe benefits including and thereby seek the unpaid wages and unpaid fringe benefits.

160.    Plaintiffs are informed and believe and based thereon allege that Defendants willfully failed to pay Plaintiffs and the California Class wages pursuant to the requirements of Labor Code §§ 201, 202, and 204 and therefore the Class is entitled the associated unpaid wages and waiting time penalties.

161.    For the reasons alleged herein, Plaintiffs on behalf of themselves and the California Class requests the unpaid wages including commission wages and wages for hours worked, waiting time penalties, interest, attorneys' fees, costs, damages, fringe benefits and other appropriate remedies in an amount to be proven at trial.

WHREFORE, Plaintiffs pray for relief as hereinafter requested.

## FOURTH CAUSE OF ACTION

### Failure to Pay Minimum Wages

### California Labor Code §§ 1182.12, 1194,

### 1194.2, 1197, and Wage Order No. 4-2001 § 4(A)

(Individual and California Class Claim

Against all Defendants on behalf of Plaintiffs and California Class)

162.    Plaintiffs re-allege and incorporate by reference the allegations in the foregoing paragraphs as though set forth herein.

163.    Pursuant to Labor Code §§ 1182.12, 1194, 1194.2, and 1197 it is unlawful for a California employer to suffer or permit an employee to work without paying wages for all hours worked, as required by the applicable Industrial Welfare Commission ("IWC") Wage Order.

164.    During all times relevant, IWC Wage Order No. 4-2001, governing the "Professional, Technical, Clerical, Mechanical and Similar Occupations" industry, applied to Plaintiffs and the California Class members' employment with Defendants.

165.    Pursuant to Wage Order 4, section 2(K), "hours worked" include the time during which an employee is "suffered or permitted to work, whether or not required to do so."

166.    IWC Wage Order No. 4-2001, § 4 (A), require every employer to pay each employee minimum wages not less than $6.75 per hour effective January 1, 2002, $7.50 per hour effective January 1, 2007, and $8.00 per hour effective January 1, 2008 to the present time.

Thomas D. Rutledge
Attorney-at-Law
3555 Fifth Avenue, First Floor
San Diego, California 92103
Telephone:   (619) 886-7224
Facsimile:   (619) 259-5455

- 27 -

Thomas D. Rutledge
Attorney-at-Law
3555 Fifth Avenue, First Floor
San Diego, California 92103
Telephone: (619) 886-7224
Facsimile: (619) 259-5455

167.    During all times relevant, California Class Members including Plaintiffs YOUNG and TAYLOR, have not been paid minimum wages for all hours suffered or permitted to work in violation of the minimum wage provisions of California Labor Code §§ 1182.12, 1194, 1194.2, and 1197, and IWC Wage Order No. 4-2001, § 4 (A)

168.    Labor Code § 1194.2, subdivision (a) provides that, in an action to recover wages because of the payment of a wage less than the minimum wage fixed by IWC Wage Orders, an employee is entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon.

169.    California Class Members including Plaintiffs YOUNG and TAYLOR should have received minimum wages in a sum according to proof during all times relevant to this action. Defendants have intentionally failed and refused, and continues to fail and refuse, to pay California Class Members including Plaintiffs YOUNG and TAYLOR minimum wages for all time suffered or permitted to work including training time.

170.    Plaintiffs on behalf of themselves and the California Class request the recovery of the unpaid minimum, waiting time penalties, liquidated damages, interest, attorneys' fees, and costs in an amount to be determined at trial.

WHEREFORE, Plaintiffs pray for relief as hereinafter requested.

## FIFTH CAUSE OF ACTION

### Failure to Pay Overtime Compensation

### Violation of California Labor Code §§ 510, 1194, and Wage Order No. 4-2001 § 3(A)

(Individual and California Class Claim

Against All Defendants on behalf of Plaintiffs and California Class)

171.    Plaintiffs re-allege and incorporate by reference the allegations in the foregoing paragraphs as though set forth herein.

172.    Eight hours of labor constitutes a day's work, and any work in excess of 8 hours in one workday and any work in excess of 40 hours in any one workweek shall be compensated at the rate of no less than one and one half times the regular rate of pay for an employee.  Any work in

- 28 -

1  excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate

2  of pay for an employee.  (Labor Code § 510 and IWC Wage Order No. 4-2001 ("Wage Order") §

3  3(A).)

4        173.    Plaintiffs allege that as a result of Defendants intentionally misclassifying California

5  Class Members as independent contractors, California Class Members including Plaintiffs YOUNG

6  and TAYLOR, worked more than 8 hours per workday, and/or more than 40 hours per workweek,

7  but did not receive any overtime wages for overtime hours suffered or permitted to work.  All

8  Plaintiffs received was commissions that did not fully compensate California Class Members at the

9  appropriate overtime rates for all overtime hours suffered or permitted to work.

10        174.    Plaintiffs on behalf of themselves and the California Class seek an amount to be

11  determined at trial seeks to recover unpaid overtime compensation, penalties, interest, reasonable

12  attorneys' fees, and costs in an amount to be determined at trial.

     WHREFORE, Plaintiffs pray for relief as hereinafter requested.

## SIXTH CAUSE OF ACTION

### Failure to Provide Meal Periods

### California Labor Code §§ 226.7 and 512 and Wage Order No. 4-2001 § 11(A))

17        (Individual and California Class Claim for Compensation

18        Against All Defendants on behalf of Plaintiffs and California Class)

19        175.    Plaintiffs re-allege and incorporate by reference the allegations in the foregoing

20  paragraphs as though set forth herein.

21        176.    No employer shall employ any person for a work period of more than 5 continuous

22  hours without providing their employee a meal period of not less than 30 minutes.  (Wage Order No.

23  4-2001, § 11(A).)

24        177.    If an employer fails to provide an employee with a proper meal period, the employer

25  shall pay the employee one hour of pay at the employee's regular rate of compensation for each

26  workday that the meal period is not provided.  (Labor Code § 512 and Wage Order No. 4-2001 §

27  11.)

28  ///

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Thomas D. Rutledge
Attorney-at-Law
3555 Fifth Avenue, First Floor
San Diego, California 92103
Telephone: (619) 886-7224
Facsimile: (619) 259-5455

Thomas D. Rutledge
Attorney-at-Law
3555 Fifth Avenue, First Floor
San Diego, California 92103
Telephone: (619) 886-7224
Facsimile: (619) 259-5455

178.     An employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second 30-minute meal period.  (Labor Code § 512 and Wage Order No. 4-2001 § 11.)

179.     During all times relevant to this action, Defendants failed to comply with § 11 of IWC Order 4-2001, by failing to provide required meal periods to California Class Members including Plaintiffs YOUNG and TAYLOR.

180.     Defendants further violated these IWC orders, and violated Labor Code section 512, by failing to pay each of its employees who was not provided with a meal period as required under these orders, an additional one hour of compensation at each employee's regular rate of pay for each day that Defendant failed to provide the employee with the required meal period.  This compensation, in a sum to be proven at trial, is owed and unpaid.

181.     Defendants intentionally failed to provide California Class Members with meal periods and meal premium wages as a result of its intentional misclassification of its Advisors as independent contractors.

182.     Plaintiffs on behalf of themselves and the California Class seek to recover unpaid meal wages, waiting time penalties, interest, reasonable attorneys' fees, and costs in an amount to be determined at trial.

WHEREFORE, Plaintiffs pray for relief as hereinafter requested.

## SEVENTH CAUSE OF ACTION

### Failure to Reimburse Loses and Expenditures Incurred

### California Labor Code § 2802

(Individual and California Class Claim Against All Defendants on behalf of Plaintiffs and California Class)

183.     Plaintiffs re-allege and incorporate by reference the allegations in the foregoing paragraphs as though set forth herein.

184.     Labor Code provides, in pertinent part, that "An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even

- 30 -

1   though unlawful, unless the employee, at the time of obeying the directions, believed them to be

2   unlawful." (Labor Code § 2802 subdivision (a).)

3       185.    During all times relevant to this action, Advisors including Plaintiffs YOUNG and

4   TAYLOR have been required to pay for certain business expenses approved through Defendants'

5   policies in addition to employment taxes, all in order to comply with Defendants' policies.

6       186.    Defendants violated § 2802 by failing to reimburse Advisors including Plaintiffs

7   YOUNG and TAYLOR for the expenditures they incurred and losses incurred in direct consequence

8   of Advisors' obedience of Defendants' rules. .

9       187.    For Defendants' misconduct as alleged herein, Plaintiffs seek on behalf of themselves

10  and the California Class reimbursement of the expenditures and losses, costs and attorneys' fees, and

11  interest in an amount to be proven at trial.

12      WHREFORE, Plaintiffs pray for relief as hereinafter requested.

<div align="center">

**EIGHTH CAUSE OF ACTION**

**Violations of California Labor Code § 226 for**

**Failure to Provide Itemized Wage Statements)**

(Individual and California Class Claim

Against All Defendants on behalf of Plaintiffs and California Class)

</div>

18      188.    Plaintiffs re-allege and incorporate by reference the allegations in the foregoing

19  paragraphs as though set forth herein.

20      189.    Plaintiffs allege that Labor Code § 226 subdivision (a) requires, in pertinent part, that

21  "Every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or

22  her employees, either as a detachable part of the check, draft, or voucher paying the employee's

23  wages, or separately when wages are paid by personal check or cash, an accurate itemized statement

24  in writing showing (1) gross wages earned, (2) total hours worked by the employee, except for any

25  employee whose compensation is solely based on a salary and who is exempt from payment of

26  overtime under subdivision (a) of Section 515 or any applicable order of the Industrial Welfare

27  Commission, (3) the number of piece-rate units earned and any applicable piece rate if the employee

28  is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders

<div style="text-align: left; font-size: smaller;">
Thomas D. Rutledge<br>
Attorney-at-Law<br>
3555 Fifth Avenue, First Floor<br>
San Diego, California 92103<br>
Telephone: (619) 886-7224<br>
Facsimile: (619) 259-5455
</div>

<div align="center">

- 31 -

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

</div>

1   of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive

2   dates of the period for which the employee is paid, (7) the name of the employee and his or her

3   social security number, except that by January 1, 2008, only the last four digits of his or her social

4   security number or an employee identification number other than a social security number may be

5   shown on the itemized statement, (8) the name and address of the legal entity that is the employer,

6   and (9) all applicable hourly rates in effect during the pay period and the corresponding number of

7   hours worked at each hourly rate by the employee. . ."   (Labor Code § 226 subdivision (a).)

8        190.    During all times relevant to this action, California Class Members including Plaintiffs

9   YOUNG and TAYLOR never received any wage statements with the required information set forth

10  under Labor Code § 226 from Defendants and suffered damages from not receiving wage statements

11  including but not limited to unpaid wages.

12       191.    Plaintiffs allege that every pay period in which California Class Members should

13  have been provided with a writing required by Labor Code § 226, Defendants violated various

14  provisions of § 226, including but not limited to subdivisions (a)(1), (a)(2), (a)(4), (a)(5), (a)(6),

15  (a)(7), (a)(8), and (a)(9) by failing to provide California Class Members including Plaintiffs

16  YOUNG and TAYLOR accurate itemized statements in writing showing (1) gross wages earned, (2)

17  total hours worked by the employee (4) all deductions (5) net wages earned, (6) the inclusive dates

18  of the period for which the employee is paid, (7) the name of the employee (8) the name and address

19  of the legal entity that is the employer, and (9) all applicable hourly rates in effect during the pay

20  period and the corresponding number of hours worked at each hourly rate by the employee.

21       192.    For Defendants' misconduct as alleged herein, Plaintiffs seek on behalf of themselves

22  and the California Class damages, penalties, costs and attorneys' fee pursuant to Labor Code § 226

23  subdivision (e) in an amount to be proven at trial.

24       193.    For Defendant's misconduct as alleged herein, Plaintiffs seeks on behalf of

25  themselves and the California Class injunctive relief and attorneys' fees and costs pursuant to § 226

26  subdivision (g).

27       WHEREFORE, Plaintiffs pray for relief as hereinafter requested.

28  ///

Thomas D. Rutledge
Attorney-at-Law
3555 Fifth Avenue, First Floor
San Diego, California 92103
Telephone:  (619) 886-7224
Facsimile:  (619) 259-5455

### NINTH CAUSE OF ACTION

**Remedies for Violations of the California Unfair Business**

**Practices Code § 17200 *et seq*.)**

(Individual and California Class Claim

Against All Defendants on behalf of Plaintiffs and California Class)

194.     Plaintiffs re-allege and incorporate by reference the allegations in the foregoing paragraphs as though set forth herein.

195.     Defendants, and each of them, are "persons" as defined under Business and Professions Code § 17021.

196.     Plaintiffs are informed and believe and based thereon allege that Defendants committed the unfair business practices, as defined by Cal. Bus. & Prof. Code § 17200, *et seq*., by violating the laws alleged to have been violated in this Complaint and which allegations are incorporated herein by reference and include, but are not limited to:

(a)  Failing to provide Plaintiffs and the Class  itemized wage statement in violation of § 226 of the Labor Code,

(b)  Failing to pay Plaintiffs and the Class all wages due and owing including minimum, overtime and commission wages,

(c)  Failing to provide Plaintiffs and the Class with meal periods,

(d)  Failing to reimburse Plaintiffs and the Class for expenditures incurred including payroll taxes and other items.

197.     Plaintiffs are informed and believe, and based thereon allege, that the practices described above were unfair within the meaning of Cal. Bus. & Prof. Code § 17200 *et seq*., because the acts were intentionally performed for the purpose of harming Plaintiffs and to deprive Plaintiffs and the California Class wages to which they were entitled pursuant to California law.

198.     Plaintiffs are informed and believe, and based thereon allege, that the unlawful, unfair and fraudulent business practices described above present a continuing threat to members of the public because it is believed that Defendants continues to operate in the illegal manner as alleged above.

Thomas D. Rutledge
Attorney-at-Law
3555 Fifth Avenue, First Floor
San Diego, California 92103
Telephone: (619) 886-7224
Facsimile: (619) 259-5455

199.   Further, such skirting of the California labor laws presents a threat to the general public in that the enforcement of the labor laws is essential to ensure that all California employers compete equally and that no California employer receives an unfair competitive advantage at the expense of its employees.

200.   As a result of the above-alleged misconduct, Plaintiffs and the California Class have been deprived of lawful wages and fringe benefits that California employees are entitled to and Plaintiffs and the California Class have suffered damages, in an amount to be determined according to proof at trial.

201.   The unfair, fraudulent, and unlawful business practices of Defendants are likely to continue because Defendants appear to have a pattern and practice of committing the same type of misconduct as alleged herein; therefore the imposition of a preliminary injunction is justified.

202.   As a direct and proximate result of the above-alleged misconduct, Plaintiffs are entitled to and hereby seeks injunctive relief and restitution for, among other things, paycheck violations, unpaid wages, overtime compensation, meal period violations, reimbursement for expenses, and disgorgement of profits in an amount to be proven at trial for the last four years from the date this Complaint was filed.

203.   As a direct and proximate result of the aforesaid acts and conduct of said Defendants, Plaintiffs are entitled to and hereby seeks attorneys' fees and costs as permitted by law and as provided for by § 1021.5 of the California Code of Civil Procedure.

WHEREFORE, Plaintiffs pray for relief as hereinafter requested.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1. For an order by the Court requiring Defendants, and each of them, to show cause, if any they have, why all its current and former Advisors working in California should not be issued itemized wage statements as required by § 226 of the Labor Code, why it should not be required to pay its current and former Advisors minimum wages and overtime under applicable state and Federal law, why it should not be required to provide its current and former Advisors working in California meal periods, why it should not be required to

Thomas D. Rutledge
Attorney-at-Law
3555 Fifth Avenue, First Floor
San Diego, California 92103
Telephone: (619) 886-7224
Facsimile: (619) 259-5455

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Thomas D. Rutledge
Attorney-at-Law
3555 Fifth Avenue, First Floor
San Diego, California 92103
Telephone: (619) 886-7224
Facsimile: (619) 259-5455

characterize its Advisors as employees, and why it should not be required to reimburse its current and former Advisors for business expenses they incurred to perform their job for Defendants including the employer's share of payroll taxes;

2. For damages in an amount to be proven at trial;

3. For all remedies available under U.S.C. §§ 206, 207(a)(1) and 216(b), and 29 CFR § 778.106 216(b) to Plaintiffs and the FLSA Advisors including award of unpaid wages, attorney's fees, costs, interest, liquidated damages according to proof to the extent permitted by law;

4. For all remedies available to Plaintiffs and the California Class under the Industrial Welfare Commission Order 4-2001 and Labor Code §§ 201, 202, 203, 204, 218, 218.5, 218.6, 226, 226.7, 510, 512, 1194, 1194.2, 1197, and 2802 including an award of unpaid wages, meal premiums, attorney's fees, costs, interest, liquidated damages, damages, penalties and waiting time penalties according to proof to the extent permitted by law;

5. For a temporary restraining order and a injunction, requiring Defendants to issue Plaintiffs and the California Class wage statements in accordance with § 226 of the Labor Code, and to classify Advisors as employees and to pay them all wages due;

6. For reimbursement to Plaintiffs and the California Class of expenditures and losses pursuant to Labor Code § 2802;

7. For costs of suit incurred herein, reasonable attorneys fees and interest to the extent permitted by law under § 1021.5 of the California Code of Civil Procedure;

8. For disgorgement and restitution;

9. For such other and further relief as the court deems just and proper.

Dated: April 28, 2010

Diane E. Richard
Grace**Hollis** LLP

By:   s/Diane E. Richard
Diane E. Richard
Attorneys for Plaintiffs YOUNG and TAYLOR
drichard@gracehollis.com

///
///

Dated:  April 28, 2010                    Thomas D. Rutledge
                                          Law Office of Thomas D. Rutledge


                                   By:    s/Thomas D. Rutledge
                                          Thomas D. Rutledge
                                          Attorneys for Plaintiffs YOUNG and TAYLOR
                                          rutledgelaw@cox.net

                          **DEMAND FOR JURY TRIAL**

Plaintiffs demand trial by jury.

Dated:  April 28, 2010                    Diane E. Richard
                                          Grace**Hollis** LLP

                                   By:    s/Diane E. Richard
                                          Diane E. Richard
                                          Attorneys for Plaintiffs YOUNG and TAYLOR
                                          drichard@gracehollis.com


Dated:  April 28, 2010                    Thomas D. Rutledge
                                          Law Office of Thomas D. Rutledge


                                   By:    s/Thomas D. Rutledge
                                          Thomas D. Rutledge
                                          Attorneys for Plaintiffs YOUNG and TAYLOR
                                          rutledgelaw@cox.net

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

**Thomas D. Rutledge**
Attorney-at-Law
3555 Fifth Avenue, First Floor
San Diego, California 92103
Telephone:  (619) 886-7224
Facsimile:  (619) 259-5455

# Exhibit A

WADDELL & REED, INC.

## PROFESSIONAL CAREER AGREEMENT

Welcome to Waddell & Reed, Inc. (referred to as "W&R Inc.") and the opportunity we offer you to develop your career in the financial planning business. The purpose of this Agreement is to list for you the basic terms governing your association with W&R Inc. and, to the extent applicable, certain W&R Affiliates' (referred to collectively with W&R Inc. as "W&R").

### COMPENSATION

1) W&R will pay you semi-monthly for your services in selling securities offered by W&R Inc.; and insurance offered by or through W&R Affiliates and the insurers with which W&R Affiliates have an agreement, at the respective commission rates shown in the Commission Schedules provided by W&R. Commissions are payable at such times as specified in the Commission Schedules after receipt of the order or application. These Schedules may be changed by us from time to time upon mailing new Schedules, or notice of modifications of Schedules, to you at your Division Office.

2) You will be eligible to receive bonuses and contest prizes as announced from time to time by W&R.

3) You may also qualify to participate in group insurance as may from time to time be made available.

4) In the event that W&R should pay or credit to you: (a) any commission and such commission is (i) advanced with respect to future payments expected to be received from the client, which payments are not timely received for whatever reason by W&R or the insurer, or (ii) paid with respect to any premium or client's investment which for any reason is refunded; or (b) any bonus advanced prior to the time such bonus is earned and which is not thereafter earned under the terms specified by, and within the bonus period stated in, the Commission Schedule then in effect, or which is otherwise forfeited; then such commission or bonus shall be repayable to W&R, and W&R will charge the amount of such commission or bonus against any commissions, bonuses or other payments, then credited to you and against any commissions, bonuses or other payments thereafter due you or, at its election, W&R may collect directly from you such charged-back commissions and bonuses, which shall become immediately due and payable in full. If such obligation remains unpaid, it will survive the term of this Agreement and you will remain indebted to W&R for the charged-back amount, with interest thereon at the applicable legal rate, until paid in full.

5) No commissions on the sale of securities or insurance policies shall vest. Service fees, bonuses and awards do not vest. To be entitled to receive and retain any service fees, advanced bonus or award, you must be duly licensed with W&R under this Agreement at the time the service fees, bonus or award is earned under the terms of the Commission Schedule then in effect.

### YOUR AUTHORITY AND RESPONSIBILITIES

1) You are authorized to represent W&R Inc. in the offering of securities for which W&R Inc. is acting as soliciting broker, dealer or principal underwriter and in receiving orders to sell securities which are placed by clients with W&R. You are authorized to represent W&R Affiliates, to the extent applicable, in the solicitation of applications for the purchase of insurance policies offered by or through W&R Affiliates and/or the insurers with which W&R Affiliates have an agreement.

2) You may offer these securities and/or insurance policies only if you are registered and licensed with applicable regulatory agencies with jurisdiction over the offering of securities and/or insurance, and you must maintain all your applicable registrations and licenses for securities and/or insurance in good standing. You will be responsible to pay all registration and licensing fees, termination fees, bond costs and expenses for any training courses not provided by W&R.

3) You must remain familiar with all federal and state laws and regulations applicable to you in offering securities and insurance policies. You agree at all times to comply strictly with these laws and regulations. You agree not to offer any securities or insurance policies, whether or not such securities or insurance policies are registered with any regulatory agency, or enter into any sales arrangement with any other securities broker or dealer, or act as an investment adviser (except as a registered investment advisor representative of W&R, Inc.), without first receiving prior written approval from the home office of W&R Inc. Such approval will not be withheld if such activity is in compliance with state and federal laws and the policies of W&R as it deems necessary, in its sole discretion, for its protection against liability and for carrying out its responsibilities under applicable laws and regulations. In addition, you agree not to be licensed as an agent for any life insurance company or health and accident insurance company and not to serve as an agent of any insurance agency for such companies, except W&R Affiliates and such other companies as W&R may designate.

MFA0678p1(8/99)

WADDELL
& REED
Financial Services

4) You must follow all rules and procedures of W&R in offering the products and services authorized under this Agreement and in using its office facilities. These rules and procedures, which may be modified from time to time, are designed to carry out W&R's responsibilities under federal and state laws and W&R Affiliates' agreements with insurers and to facilitate the processing of business.

5) On termination of this Agreement, you will promptly surrender to W&R all manuals, sales materials, supplies, client files, cards and lists of W&R's clients and all other items developed or obtained during the period of this Agreement that relate to W&R business in any way.

6) (a) You shall pay all your expenses and shall not, nor have you any authority to, incur any expenses on behalf of or charge any costs or items to W&R.

(b) You shall not make any arrangement or representation on behalf of W&R and shall not, nor have any authority to, waive, alter or change any term or provision of any sales material, policy, form, application or rider for any security or insurance policy offered by or through W&R.

7) Subject to the responsibilities and limitations stated in this Agreement, you shall be free to use W&R office facilities and to exercise your own judgment as to the persons whom you solicit and the time, place and manner of solicitation.

8) At all times you shall act as an independent contractor, and nothing contained in this Agreement shall be construed to create or to impose conditions that create the relationship of employer and employee between you and W&R.

**OTHER**

This Agreement may be terminated by either of us upon giving reasonable notice to the other, which shall be deemed sufficient if in writing and delivered to your Division Office. This Agreement shall be terminated upon failure by you to meet any minimum earnings or sales production requirements, which may be established or modified by W&R from time to time.

This Agreement contains all of our understandings and replaces any and all other agreements between us concerning your association with W&R

WADDELL & REED, INC. and W&R Affiliates*

by _____
(Authorized Home Office Signature)

Effective Date  9/29/05
(Home Office Use Only)

Agreed to and accepted

_August 20, 18 2005_

_Kenneth B Young_
(Print Name)

(Signed) _____

(Rep Number)  34904

*W&R Affiliates means any company controlling, controlled by and/or under common control with Waddell & Reed, Inc., with which you now or hereafter during the term of this Agreement may be associated, registered or licensed for insurance purposes, including Waddell & Reed, Inc. if applicable in your state.

MFA0878p2(8/99)