# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL TAYLOR, et al.,<br><br>   Plaintiffs,<br><br> vs.<br><br>WADDELL & REED INC., et al.,<br><br>   Defendants. | CASE NO. 09CV2909 DMS (WVG)<br><br>**ORDER DENYING WADDELL & REED INC.'S MOTION TO DISMISS, AND, ALTERNATIVELY, MOTION TO STRIKE**<br><br>[Doc. 25.] |

  Pending before the Court is Defendant Waddell & Reed, Inc.'s ("W&R Inc.") motion to dismiss Plaintiffs' First Amended Complaint ("FAC") for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), and alternatively, to strike certain allegations pursuant to Rule 12(f). The matter came on for hearing on July 23, 2010. Michael Grace, Graham Hollis, Diane Richard, and Thomas Rutledge appeared on behalf of Plaintiffs. Orrin Harrison, Raymond Bertrand, and Gregory Knopp appeared on behalf of Defendants. For the reasons set forth below, W&R Inc.'s motion is denied.

///
///
///
///

# I.

# BACKGROUND

This matter is a proposed wage and hour class action brought by former Waddell & Reed ("W&R") financial advisors ("Advisors").[1] (FAC ¶ 1.) Plaintiffs allege they were classified as independent contractors, when, in fact, they were employees. (*Id.* at ¶¶ 3, 5.)

W&R is in the business of selling financial products, which are distributed through a sales force of Advisors. (*Id.* at ¶ 2.) When Advisors begin working for W&R, they are required to sign a "Professional Career Agreement" ("PCA"). (*Id.* at ¶ 37.) This agreement provides the basic terms governing the association with W&R Inc. and Waddell & Reed Affiliates ("W&R Affiliates"). (*Id.*) Advisors were classified as independent contractors and were paid on a commission basis. (*Id.* at ¶ 34, 114.) Advisors did not receive a salary or hourly wage and were not paid overtime. (*Id.* at ¶¶ 114, 117-118.)

According to Plaintiffs, Advisors should have been classified as employees because, among other things, Advisors could sell only under the name of W&R and could only sell securities authorized by W&R. (*Id.* at ¶¶ 40-41.) Advisors were assigned clients by W&R and had to surrender all client files, client lists and client data to W&R upon termination of the working relationship. (*Id.* at ¶ 49.) Advisors were required to work a specified number of hours and generally adhere to a schedule proposed by W&R. (*Id.* at ¶ 57.) Advisors were encouraged to work at W&R's offices and had to explain any activities conducted outside the office. (*Id.* at ¶¶ 60-61.) Advisors were required to attend meetings or face disciplinary action, and were subject to periodic performance reviews by Defendants. (*Id.* at ¶¶ 68-69.)

Plaintiffs filed suit on December 28, 2009, alleging nine claims for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206-207, the California Labor Code, and California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et. seq*. On April 28, 2010, Plaintiffs filed the FAC. W&R Inc. filed a motion to dismiss Plaintiffs' complaint on April 30, 2010, which the Court construed as a motion to dismiss the FAC. (Doc. 26.) Plaintiffs filed an opposition and

---

[1] Plaintiffs use "Advisors" to refer to persons holding positions such as "Advisor," "Financial Sales," "Senior Financial Advisor," "Representative" and "Financial Advisor." (FAC ¶ 1.)

1 Defendant filed a reply. (Docs. 33 & 40.) Additionally, on July 16, 2010, the Court received an amicus brief from Financial Services Institute, Inc. regarding issues raised in Defendant's motion. (Doc. 42.)

## II.

## DISCUSSION

W&R is a registered broker-dealer in the financial services industry, a highly regulated field. W&R is a member of the Financial Industry Regulatory Authority, Inc. ("FINRA") and is subject FINRA, SEC and California insurance regulations. Defendant argues that Plaintiffs' allegations of employment indicia are requirements imposed by law, and are therefore irrelevant to the determination of Plaintiffs' employment classification. Defendant argues that when allegations regarding legally mandated conduct are stripped away, Plaintiffs fail to state a claim under the FLSA or California law.

**A.     Legal Standard**

In two recent opinions, the Supreme Court established a more stringent standard of review for 12(b)(6) motions. *See Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). To survive a motion to dismiss under this new standard, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950 (citing *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007)). The reviewing court must therefore "identify the allegations in the complaint that are not entitled to the assumption of truth" and evaluate "the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief." *Id.* at 1951.

/ / /

/ / /

/ / /

**B.     Analysis**

Wage and hour laws apply to employees, not independent contractors. Under the FLSA, an employee is defined as "any individual employed by an employer." 29. U.S.C. § 203(e)(1). In determining whether an individual is an employee or an independent contractor, courts apply an "economic realities" test. *Hale v. Arizona*, 993 F.2d 1387, 1393 (9th Cir. 1993); *Real v. Driscoll Strawberry Associates, Inc.*, 603 F.2d 748, 754 (9th Cir. 1979). The test examines a number of factors, such as: 1) the degree of the alleged employer's right to control the manner in which the work is to be performed; 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; 3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; 4) whether the service rendered requires a special skill; 5) the degree of permanence of the working relationship; and 6) whether the service rendered is an integral part of the alleged employer's business. *Real*, 603 F.3d at 754. No one factor is dispositive; rather, courts evaluate the totality of circumstances in making a determination. *Id.*

California law is similar. The test for an employment relationship relies principally on whether the alleged employer "has the right to control the manner and means by which the worker accomplishes the work." *Estrada v. FedEx Ground Package System, Inc.*, 154 Cal. App. 4th 1, 10 (2007). Other factors also are considered, such as: 1) whether the worker is engaged in a distinct occupation or business, 2) whether, considering the kind of occupation and locality, the work is usually done under the principal's direction or by a specialist without supervision, 3) the skill required, 4) whether the principal or worker supplies the instrumentalities, tools, and place of work, 5) the length of time for which the services are to be performed, 6) the method of payment, whether by time or by job, 7) whether the work is part of the principal's regular business, and 8) whether the parties believe they are creating an employer-employee relationship. *Id.* The determination of whether a person is an employee or an independent contractor is generally a question of fact. *Id.*

Defendants argue that the indicia of control mandated by state and federal regulations should not be considered in determining whether Plaintiffs were employees. For example, Defendant argues Plaintiffs' allegation that "Defendants inform advisors that all incoming and outgoing messages are the company's records and are subject to monitoring by Defendants" is not relevant to the question

of control because FINRA requires each member to "develop written procedures . . . for the review of incoming and outgoing written and electronic correspondence with the public." NASD Rule 3010(d)(2).

The Court agrees with Defendant's general contention, *i.e.*, that compliance with legal requirements is not indicative of control for purposes of establishing an employer-employee relationship. The cases cited by Defendant, however, have used that general proposition in a narrow and limited way. *See Zhao v. Bebe Stores, Inc.*, 247 F. Supp. 2d 1154, 1160-1161 (C.D. Cal. 2003) (clothing store's use of a compliance monitor to ensure garment manufacturer's compliance with labor laws, as encouraged by the Department of Labor, was not considered when examining the existence of a joint employer relationship); *Matson v. 7455, Inc.*, 2000 WL 1132110 (D. Or. 2000) (rule imposed by the defendants to ensure compliance with criminal statute was not reflective of the defendant's control over the plaintiff's job performance). Here, however, the FINRA regulations are far more general. For example, FINRA Rule 3010 requires each member to "establish and maintain a system to supervise the activities of each registered representative, registered principal and other associated person that is reasonably designed to achieve compliance with applicable securities laws and regulations, and with applicable NASD Rules." NASD Rule 3010(a). But FINRA does not specify how such supervision must be carried out.

Plaintiffs allege that Advisors were assigned clients by W&R and had to surrender all client files, client lists and client data to W&R upon termination of the working relationship. (FAC ¶ 49.) Advisors were required to work a specified number of hours and generally adhere to a schedule proposed by W&R. (*Id.* at ¶ 57.) Advisors were encouraged to work at W&R's offices and had to explain any activities conducted outside the office. (*Id.* at ¶¶ 60-61.) Advisors used telephones, offices and fax machines provided by Defendant. (*Id.* at ¶ 55.) Advisors were required to attend meetings or face disciplinary action, and were subject to periodic performance reviews by Defendants. (*Id.* at ¶¶ 68-69.) Defendant set job performance and sales goals for the Advisors. (*Id.* at ¶ 64.) Defendant established quotas concerning many aspects of Advisors' jobs, such as the number of newly scheduled appointments, appointments scheduled in advance, and daily appointments. (*Id.* at ¶¶ 65.) These allegations indicate that Defendant's actions may have gone beyond the general supervision

required by FINRA and created an employer-employee relationship. Accordingly, Plaintiffs' allegations are sufficient to survive a Rule 12(b)(6) motion.

Alternatively, Defendant seeks to strike many of Plaintiff's allegations as immaterial under Rule 12(f). The allegations, however, are not immaterial, impertinent or scandalous. Defendant's motion to strike is therefore denied.

## III.
## CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss, and, alternatively, motion to strike is denied.

**IT IS SO ORDERED.**

DATED: August 12, 2010

_____
HON. DANA M. SABRAW
United States District Judge