UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL E. TAYLOR, et al., | Civil No. 09-2909-AJB(WVG) |
| Plaintiffs, | ORDER GRANTING DEFENDANT'S APPLICATION TO COMPEL |
| v. | PRODUCTION OF DOCUMENTS IN RESPONSE TO PLAINTIFFS' |
| WADDELL & REED, INC., et al., | COUNSEL'S LETTER TO DEFENDANTS' FINANCIAL ADVISORS |
| Defendants. | |

I. FACTUAL SUMMARY

On or about February 4, 2011, Plaintiffs' counsel sent letters to Defendant Waddell & Reed's (hereafter "Defendant" or "Waddell") former and present Financial Advisors. Waddell's current Financial Advisors were contacted via use of Defendant's e-mail system.[1] Waddell's current Financial Advisors were contacted pursuant to a Court order entered on January 20, 2011. The letters informed the recipients of the instant lawsuit and sought further information regarding the lawsuit. The letters invited the recipi-

---

[1] It is unclear whether former Waddell Financial Advisors also received the same or similar letter by means other than use of Defendant's e-mail system.

1

09cv2909

1  ents to contact Plaintiffs' counsel if the recipients wanted to
2  learn more about the lawsuit.
3     Waddell has sought from Plaintiffs the responses from the
4  letter's recipients. (Waddell's Request for Production of Documents,
5  Set 2, No. 1). Plaintiffs have refused to produce to Defendant the
6  responses to the letters, claiming that the responses are protected
7  by the attorney-client privilege.

8  II. <u>PROCEDURAL BACKGROUND</u>

9     Given the discovery and briefing schedule for Plaintiffs'
10 Motion for Class Certification, the Court did not require formal
11 briefing of this matter. Instead, it opted for counsel to submit
12 more efficient informal letter briefing. The parties submitted their
13 letter briefs on May 3 and 5, 2011. A telephonic conference was held
14 on May 16, 2011 at which time the parties had the opportunity to
15 argue their respective positions.

16 III. <u>ANALYSIS</u>

17    It well settled under California law that the attorney-client
18 privilege applies to confidential communications during preliminary
19 negotiations with an attorney even if employment of the attorney is
20 declined. <u>Rosso, Johnson & Ebersold v. Superior Court</u>, 191 Cal. App.
21 3d 1514, 1518 (1987)[citing <u>Estate of Dupont</u>, 60 Cal. App. 2d 276,
22 287-288 (1943)]. "The fiduciary relationship existing between lawyer
23 and client extends to preliminary consultations by a prospective
24 client with a view to retention of the lawyer, although actual
25 employment does not result." <u>People ex. rel. Department of Corps. v.</u>
26 <u>Speedee Oil Changes Systems</u>, 20 Cal. 4th 1135, 1147-1148
27 (1999)[citing <u>Westinghouse Elec. Corp. v. Kerr-McGee Corp.</u>, 580 F.2d
28 1311, 1319 (7th Cir. 1978)]. This legal principle is further

supported by California Evidence Code § 951, which states in pertinent part: "...(C)lient means a person who, directly or through an authorized representative, consults a lawyer for the purpose of *retaining the lawyer* or securing legal service or advice from him in his professional capacity..." (emphasis added).

Therefore, it is axiomatic that communications by prospective clients with a view toward obtaining legal services are protected in California by the attorney-client privilege regardless of whether they ever retain the attorney. <u>Beery v State Bar of Cal.</u>, 43 Cal. 3d 802 (1987). Both parties accept this basic proposition. Here, the question is whether responses to Plaintiffs' attorneys' letter can be considered a communication by a prospective client who was considering whether to be represented by Plaintiffs' attorneys or to opt into the lawsuit.[2]

---

[2] The Court notes that some of the responses to the letters may have been provided to Plaintiffs' counsel via Defendant's e-mail system. "A communication between persons in an attorney-client relationship does not lose its privileged character for the sole reason that it is communicated by electronic means or because persons involved in the delivery, facilitation or storage of (the) electronic communication may have access to the content of the communication." Cal. Evid. Code § 917(b). However, the electronic communication is not privileged when "(1) the electronic means used belongs to the defendant; (2) the defendant has advised the plaintiff that communications using electronic means are not private, may be monitored, and may be used only for business purposes; and (3) the Plaintiff is aware of and agrees to these conditions. A communication under these circumstances is not a 'confidential communication between client and lawyer' because it is not transmitted by a means which, so far as the client is aware, discloses the information to no third persons other than those who are present to further the interest of the client'". Cal. Evid. Code § 952. However, if the electronic communication is sent by means other than by defendant's e-mail system (i.e. a plaintiff's home computer), the communication may be privileged unless the plaintiff allowed others to have access to his/her emails. <u>Holmes v. Petrovich Development Co.</u>, 191 Cal. App. 4th 1047, 1068 (2011).
Plaintiffs concede that some responses to the letter were sent using Defendant's e-mail system. Further, Plaintiffs concede that no Financial Advisors had an expectation of privacy in the contents of any e-mail sent using Defendant's e-mail system. Therefore, as to those responses in which Defendant's e-mail system was used, no

(continued)
attorney-client relationship was created. It is to any other

First, the Court must start with Plaintiffs' attorneys' letter to the putative class members:

After an introductory opening paragraph, the letter states "[w]e are in the process of gathering additional information and would like to ask you a few short questions..." The letter concludes by stating that "[i]f you or anyone you know would like to learn more about this case please go to [Plaintiffs' attorneys' website], send an e-mail to [Plaintiffs' attorneys' e-mail address] or call [a phone number]." A close reading of the letter "does not make clear that its purpose was to solicit responses only from persons who wanted to be represented by [Plaintiffs' attorney."] <u>U.S. Equal Employment Opportunity Commission v. AMB Industries Inc.</u>, 261 F.R.D. 503, 509 (E.D. CA 2009). To the contrary, a fair reading of the letter clearly suggests that Plaintiffs' attorneys were seeking information and also making themselves available to answer any questions about the lawsuit. The letter does not state directly, or even indirectly, that Plaintiffs' attorneys are seeking to establish an attorney-client relationship or are looking for clients. Nor does the letter suggest to the recipient that any response to it will be construed as a request for representation. Further, the letter does not indicate or promise that the recipients' responses will be kept confidential. "[T]he mere fact that the letter and questionnaire was sent to a group of potential claimants (and/or) witnesses does not suffice to create the privileged professional relationship." <u>Id.</u> at 508.

---

responses to the letter not using Defendant's e-mail system that this analysis addresses.

The Court contrasts the letter in this case with other plaintiff attorney-initiated letters, questionnaires, and solicitations via websites in putative and certified class actions where courts have held responses were in fact protected by the attorney-client privilege. In Vodak v. City of Chicago, 2004 WL 783051 at *2 (N.D. IL 2004), the questionnaire in that case specifically stated that any information provided would be "held in strict confidence and used only by the attorneys providing legal representation."

In Hudson v. General Dynamics Corp, 186 F.R.D. 271, 276-277 (D. CT 1999), the Court determined that a questionnaire completed by existing clients or those "attempting to become prospective clients" was privileged and protected from discovery while questionnaires completed by former employees of defendant "not for the purpose of obtaining legal advice, but solely to serve as witness statements, and were completed prior to the existence of or any attempt by the recipient to create an attorney client relationship" was not protected by the attorney-client privilege.

In Gates v. Rohm and Hass Co., 2006 WL 3420591 at *3-*4 (E.D. PA 2006), the court concluded that completed questionnaires were protected from discovery on two grounds; they were privileged attorney-client communications and also represented work product. Nevertheless, the court ordered disclosure of the completed questionnaires because, in practicality, the factual information contained within the responses to the questionnaires were discoverable and it would have been unduly burdensome for both parties to propound and respond to countless interrogatories and/or depositions seeking the factual information contained within the responses to the questionnaires. The court relied on the Supreme

Court decision of <u>Oppenheimer Fund, Inc. v. Sanders</u>, 437 U.S. 340, 354, n. 20 (1978), and also ordered the disclosure of names and addresses of putative class members. (However, the putative class members' telephone numbers and e-mail addresses were ordered to be redacted.)

A different result was reached in <u>Barton v. United States District Court for the Central District of California</u>, 410 F.3d 1104, 1107 (9th Cir 2005). In that case, an attorney's website specifically stated that no attorney-client relationship was being formed by the recipient's responses or requests for information. The <u>Barton</u> court focused on the client's rights, not the attorney's rights, stating that "more important than what the law firm intended is what the clients thought." <u>Id</u>. The court found that the wording in the attorney's website was ambiguous. Consequently, the court refused to penalize the clients for ambiguity created by the attorney's inartful drafting of the website's content. <u>Id</u> at 1110. The court relied upon the unequivocal proposition that pre-employ-ment communications between a prospective client and attorney with a view toward retaining the attorney is protected by the attorney-client privilege. In this regard, the court ignored the website's disclaimer and concluded that the clients' responses "were submitted in the course of an attorney-client relationship" and therefore were protected attorney-client communications. <u>Id</u> at 1109.

Here, the letter in issue is clearly distinguishable in content, substance and intent from the wording in the <u>Barton</u> website. In the letter in this case, there was no effort whatsoever to convey even the impression, much less the fact, that an attorney-client relationship could be created by inquiries generated by the

letter. The <u>Barton</u> website was seeking individuals who had been harmed by a pharmaceutical product and the impression was conveyed, despite specific language to the contrary, that anyone who responded may become a client in a class action lawsuit.

Plaintiffs' attorneys argue that they have a duty to protect the communications from not only those individuals who already have opted into the putative class action and established an attorney-client relationship, but also a duty to protect the communications of putative class members who have yet to decide whether to opt into this putative class action lawsuit. Plaintiff's argument lacks merit. "While lead counsel owes a generalized duty to unnamed class members, the existence of such a fiduciary duty does not create an inviolate attorney-client relationship with each and every member of the putative class." <u>In re McKesson HBOC, Inc. Sec. Litig.</u>, 126 F.Supp. 2d 1239, 1245-46 (N.D. CA 2000). "This is only a putative class action and not a certified class action. The employees who have filed notices seeking to join this lawsuit as class members, therefore, cannot be considered clients of the [law] firm." <u>Moriskey v. Public Service And Gas Co.</u>, 191 F.R.D. 419, 424 (D. NJ 2000). The pivotal question is whether the putative class members were seeking legal advice or representation at the time when they completed any questionnaires, or responded to the letter inquiries as is the case here.

In <u>Schiller v City of New York</u>, 245 F.R.D. 112 (S.D. NY 2007), the plaintiffs' attorneys distributed a questionnaire seeking information about alleged police brutality at the Republican National Convention. The letter in this case is very similar in content in that it too only sought information. In declining to hold

7

09cv2909

that the responses to the questionnaire constituted privileged attorney-client communications, the court stated that Plaintiff had not "offered [any] evidence that any person who completed a questionnaire believed at that time that he or she was seeking representation by the [law firm]; moreover any such belief would have been unreasonable." Id. at 116.

While the Court must focus on what the putative client may have thought when he or she responded to the letter, as in Barton, the Court must also determine whether any belief of representation was reasonable, as the court did in Schiller. The Schiller questionnaire is very similar to the letter in this case in that both only asked for information and made no express or implied representation that an attorney-client relationship would be formed by a response. Accordingly, if any former or present Financial Advisor of Defendant believed that responding to the letter would form an attorney-client relationship, that belief was unreasonable.

There appears to be differing views of where the burden lies in establishing the existence of the attorney-client relationship – with the party asserting it, see U.S. v International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, 119 F.3d 210, 214 (2nd Cir. 1997), or with the opponent of the existence of attorney-client relationship. See Barton, 410 F.3d at 1110. Regardless of which party carries the burden, the Court finds that here, Defendant has carried its burden.

IV. ORDER

The Court concludes that the letter (Exh. B to Defendant Waddell's letter brief) sent by Plaintiffs' attorneys to putative

class members, (both former[3] and present Financial Advisors of Waddell), and the responses thereto, are discoverable and not protected by the attorney-client privilege or the work product doctrine. Defendant's Application to Compel Production of the Responses to Plaintiffs' Counsel's Letter is GRANTED.

On or before May 27, 2011, Plaintiffs' counsel shall produce to Defendants the responses to the letter. Plaintiffs' counsel may redact from the responses the e-mail addresses and/or telephone numbers, if any, contained in the responses to the letter.

DATED:   May 20, 2011

　　　　　　　　　　　　　　　　　　　　　Hon. William V. Gallo
　　　　　　　　　　　　　　　　　　　　　U.S. Magistrate Judge

---

[3] See footnote 1.