1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

11  MICHAEL E. TAYLOR; KENNETH B.                 )   Case No.: 09cv2909 AJB (WVG)
    YOUNG; individuals, on behalf of              )
12  themselves individually and on behalf of      )   **ORDER (1) GRANTING IN PART AND**
    others similarly situated,                    )   **DENYING IN PART PLAINTIFFS'**
13                                                 )   **MOTION FOR LEAVE TO FILE**
                                                   )   **SECOND AMENDED COMPLAINT**
                           Plaintiffs,            )   **AND (2) GRANTING DEFENDANT'S**
14  v.                                             )   **MOTIONS FOR SUMMARY**
                                                   )   **JUDGMENT**
15  WADDELL & REED, INC., a Delaware               )
    Corporation,                                   )   **[Docs. 142, 149, 150]**
16                                                 )
                           Defendant.             )
17  _____           )

18          Presently before the Court are Plaintiffs' motion for leave to file a Second Amended Complaint

19  (Doc. 142), Defendant's motion for summary judgment as to Plaintiff Kenneth Young (Doc. 149), and

20  Defendant's motion for summary judgment as to Plaintiff Michael Taylor (Doc. 150). The Court held a

21  hearing on the three motions on August 3, 2012. For the reasons set forth below, the Court (1)

22  **GRANTS in part and DENIES in part** Plaintiffs' motion for leave to amend and (2) **GRANTS**

23  Defendant's two motions for summary judgment.

24                                              **I.**

25                                        **BACKGROUND**

26          This matter is a proposed wage and hour collective action brought by former Waddell & Reed

27  ("W&R") financial advisors ("Advisors"). (FAC ¶ 1.) Named Plaintiffs Kenneth B. Young and Michael

28

E. Taylor seek to represent a class of Advisors who allege they were classified as independent contractors, when, in fact, they were employees. (*Id.* at ¶¶ 3, 5.)

W&R is in the business of selling financial products, which are distributed through a sales force of Advisors. (*Id.* at ¶ 2.) When Advisors begin working for W&R, they are required to sign a "Professional Career Agreement" ("PCA"). (*Id.* at ¶ 37.) This agreement provides the basic terms governing the association with W&R Inc. and Waddell & Reed Affiliates ("W&R Affiliates"). (*Id.*) Advisors were classified as independent contractors and were paid on a commission only basis. (*Id.* at ¶ 34, 114.) Advisors did not receive a salary or hourly wage and were not paid overtime. (*Id.* at ¶¶ 114, 117-118.) With regard to the independent contractor relationship, the PCA specifically states, "Subject to the responsibilities and limitations stated in this Agreement, ***you shall be free to use W&R office facilities and to exercise your own judgment as to the persons whom you solicit and the time, place, and manner of solicitation***." (*See* Agreement at 2 & ¶ 7 (emphasis added).)

Plaintiffs filed suit on December 28, 2009, alleging nine claims for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206-207, the California Labor Code, and California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et. seq*. On April 28, 2010, Plaintiffs filed the FAC. Plaintiffs filed the instant motion to amend on March 12, 2012, and Defendant filed the instant motions for summary judgment on June 21, 2012.

Defendant previously filed motions for partial summary judgment as to the FLSA claims only. On January 3, 2012, the Court granted those motions, finding that the FLSA claims failed because Plaintiffs fell under the FLSA's "outside salesperson" exemption.  The Court simultaneously denied as moot Plaintiffs' motion for conditional class certification (since it involved only the FLSA claims). (Doc. 137.) Defendant now moves for summary judgment on the remaining California claims.

## II.

## PLAINTIFFS' MOTION TO AMEND

Plaintiffs seek to amend their Complaint. Their proposed Second Amended Complaint ("SAC") would add (1) an additional named plaintiff, Brian Jaeger, who was formerly a W&R "Advisor" until September 2011, and (2) a claim by Jaeger, in a representative capacity, under Lab. Code §§ 2698, *et*

09cv2909

1   *seq.* (the Private Attorney General Act, "PAGA") for "civil penalties" set forth in that and certain other

2   Labor Code sections.

3        Absent undue prejudice, or a "strong showing" of bad faith or futility, there is "a

4   presumption under Rule 15(a) in favor of granting leave to amend." *Eminence Capital*, 316 F.3d

5   1048, 1052 (9th Cir. 2003). However, the Court's discretion to deny leave to amend is broader where, as

6   here, the Plaintiffs have previously amended the Complaint. *Allen v. City of Beverly Hills*, 911 F.2d 367,

7   373 (9th Cir. 1990). Here, Defendant argues that Plaintiffs' proposed amendment would be futile for

8   two reasons, each of which is discussed below.

9   **A.**    **Section 226.8**

10       Defendant argues that Plaintiffs' proposed amendment is futile because Jaeger lacks standing to

11   assert a PAGA claim to recover penalties based on violations of Cal. Lab. Code § 226.8, which applies

12   larger penalties than other penalties recoverable under PAGA. However, that particular section did not

13   become effective until after Jaeger was no longer affiliated with W&R. Section 226.8 was codified on

14   January 1, 2012, and Jaeger was no longer associated with W&R on that date. His association ended

15   four months earlier, in September 2011. There is no indication that Section 226.8 was intended to apply

16   retroactively. Consequently, the Court agrees that any Section 226.8 claims by Jaeger would be futile.

17   **B.**    **Exhaustion**

18       Defendant also argues that the amendment would be futile because Jaeger failed to exhaust

19   administrative prerequisites under PAGA, and the claims are thus subject to dismissal. Under PAGA, an

20   aggrieved employee must exhaust certain administrative procedures ***before*** commencing a court action

21   seeking penalties and must plead compliance with those procedures. Specifically, a plaintiff can file a

22   lawsuit only after (1) the aggrieved employee provides the Labor and Workforce Development Agency

23   ("LWDA") and his employer with written notice of the employer's alleged Labor Code violations; and

24   (2) the employee either receives written notice from the LWDA that the agency does not intend to

25   investigate the alleged violation or 33 days pass from the date the plaintiff provided notice to the LWDA

26   and the LWDA does not respond. Cal. Lab. Code § 2699.3(a)(2); *see Caliber Bodyworks, Inc. v.*

27   *Superior Court of L.A. Cnty.*, 134 Cal. App. 4th 365, 375 (Cal. App. 2005) (dismissing PAGA claims

28

09cv2909

1    with prejudice because plaintiffs failed to plead compliance with PAGA's notice and exhaustion

2    requirements).

3          Here, Plaintiffs filed the motion to amend on the very same day (March 12, 2012) that they

4    provided the required written notice to the LWDA and W&R. Thus, the LWDA had not yet responded,

5    and neither had 33 days passed without LWDA notice, at the time Plaintiffs sought their amendment.

6    Plaintiffs therefore did not meet the prerequisites for filing a PAGA claim. Moreover, the proposed SAC

7    does not plead compliance and even acknowledges that the administrative procedures have not been

8    exhausted. (*See* Proposed SAC ¶ 207 (noting that Plaintiff "will have satisfied" the notice requirement in

9    the future).)

10          The Court agrees with Defendant that the proposed SAC is deficient because it does not plead

11   exhaustion. However, the Court also notes that exhaustion has occurred in the meantime. On April 19,

12   2012, Plaintiffs' counsel received the LWDA's written notice that it does not intend to investigate the

13   alleged violations. Because the exhaustion requirements have now been satisfied, the Court finds that

14   the most efficient solution is simply to allow Plaintiffs to revise their proposed SAC to plead compliance

15   with the PAGA administrative prerequisites.

16          For these reasons, the Court **DENIES** Plaintiffs' motion to amend as to the Section 226.8 claims,

17   but it **GRANTS** the motion to amend as to the remaining claims. To remedy the exhaustion deficiency,

18   Plaintiffs have leave to revise their proposed SAC so that it properly pleads compliance with the PAGA

19   prerequisites.

20                                              **III.**

21                      **DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT**

22          Defendant W&R has two pending motions for summary judgment—one as to Plaintiff Kenneth

23   Young and the other as to Plaintiff Michael Taylor. Because the two motions involve similar legal and

24   factual issues, the Court considers them together.

25   **A.     Legal Standard**

26          "The court shall grant summary judgment if the movant shows that there is no genuine dispute as

27   to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A

28

                                                  4

genuine issue of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006).

In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the nonmoving party's claim, or to a defense on which the nonmoving party will bear the burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos. Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). When the nonmoving party would bear the burden of proof at trial, the moving party may satisfy its burden on summary judgment by simply pointing out to the Court an absence of evidence from the nonmoving party. *Miller*, 454 F.3d at 987. "The moving party need not disprove the other party's case." *Id.*

Once the movant has made that showing, the burden shifts to the opposing party to produce "evidence that is significantly probative or more than 'merely colorable' that a genuine issue of material fact exists for trial." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1137 (9th Cir. 2009) (citing *FTC v. Gill*, 265 F.3d 944, 954 (9th Cir. 2001)); *see also Miller*, 454 F.3d at 988 ("[T]he nonmoving party must come forward with more than 'the mere existence of a scintilla of evidence.'") (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The Court must review the record as a whole and draw all reasonable inferences in favor of the nonmoving party. *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 736, 738 (9th Cir. 2000). However, unsupported conjecture or conclusory statements are insufficient to defeat summary judgment. *Id.*; *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1103 (9th Cir. 2008). "Thus, '[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *Miller*, 454 F.3d at 988 (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

**B.    The *Borello* Factors**

To succeed on their California wage and hour claims, Plaintiffs Young and Taylor must have been W&R's "employees."[1] Where, as here, the term "employee" is not defined by the applicable

---

[1] *See* Cal. Labor Code §§ 201-204, 218, 226, 510, 512, 1194, 1197, 2802; IWC Wage Order 4-2001.

09cv2909

statute, courts must apply the common law test of employment. *See Soto v. Diakon Logistics (Del.), Inc.*, Civ. No. 08cv33-L (WMC), 2011 WL 3515917, at *3 (S.D. Cal. Aug. 10, 2011).

California's common law test for determining worker status is set forth in *S.G. Borello & Sons, Inc. v. Department of Industrial Relations*, 48 Cal. 3d 341 (1989). Under *Borello*, the "principal test of an employment relationship" is "[w]hether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired." *Id.* at 350 (citations and quotations omitted). *Borello* also recognizes the following "[a]dditional factors" for determining worker classification: whether the worker is engaged in a distinct occupation or business; the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the principal or by a specialist without supervision; the skill required in the occupation; whether the principal or the worker supplies the instrumentalities, tools, and place of work; the length of time for which the services are to be performed; the method of payment, whether by the time or by the job; whether the work is part of the regular business of the principal; whether the principal has the right to discharge at will, without cause; and whether the parties believe they are creating an employment relationship. *Borello*, 48 Cal. 3d at 350-51; *see also Arnold v. Mut. of Omaha Ins. Co*., 202 Cal. App. 4th 580, 584 (Cal. Ct. App. 2011).

The individual *Borello* factors "cannot be applied mechanically as separate tests; they are intertwined and their weight often depends on particular combinations." *Borello*, 48 Cal. 3d at 351 (internal citations and quotations omitted). "Even if one or two of the individual factors might suggest an employment relationship, summary judgment is nevertheless proper when . . . all the factors weighed and considered as a whole establish that [plaintiff] was an independent contractor and not an employee." *Arnold*, 202 Cal. App. 4th at 590 (citations omitted).

Here, Defendant argues that when the *Borello* factors are weighed and considered as a whole, the undisputed evidence shows that both Young and Taylor were independent contractors and not employees. Specifically, Defendant points to the following facts indicating independent contractor status.

09cv2909

1    •    **Plaintiffs Young and Taylor believed they were creating, and intended to create, an**

2         **independent contractor relationship.**[2] The Professional Career Agreement that Young and

3         Taylor signed evidences their intent and understanding that they were independent contractors

4         affiliated with W&R, not employees. The Agreement's notice of termination provision indicates

5         independent contractor status, and the Court previously found that the Agreement's language

6         indicated W&R intended for Advisors to have free rein to conduct their sales work in the manner

7         and place of their choosing. (*See* Doc. 137 at 7.) Further, both Young and Taylor represented to

8         the Financial Industry Regulatory Authority, Inc. ("FINRA") that they were independent

9         contractors with W&R.

10   •    **Both Taylor and Young reported their earnings based on 1099s.**[3] In addition, Taylor

11        deducted her business expenses and certified in her federal tax forms, under penalty of perjury,

12        that she was an independent proprietor. Courts have often deemed tax treatment and the way

13        workers characterize their tax status as indicative of the true nature of their status.[4]

14   •    **Plaintiffs' sales business was a "distinct business" that required licenses and skill to**

15        **operate.**[5] Both Young and Taylor ran their own business to provide financial planning services,

16        investment products, and insurance. To do so, both had to be highly skilled and licensed. They

17        determined their own business strategies, made their own business decisions, and determined

18        whom they would target as potential clients.

19

20

21

22

23        [2] *See Barnhart v. N.Y. Life Ins. Co.*, 141 F.3d 1310, 1313 (9th Cir. 1998) (contract containing
          clear language that individual was an independent contractor, not an employee, supported finding of
24        independent contractor status)*; see also* Compl. ¶¶ 1, 37; Taylor Depo. Tr. 58:10-15, 63:14-20, 64:1-6,
          73:15-74:1; Young Depo. Tr. 249:12-250:3, 256:4-15; 257:6-258:2, 275:7-276:9, 285:22-286:5.
25
          [3] *See* Young Depo. Tr. 280:5-13; Taylor Depo. Tr. 151:8-13, 251:22-252:14, 253:18-254:3.
26
          [4] *Barnes v. Colonial Life & Accident Ins. Co.*, 818 F. Supp. 978, 981 (N.D. Tex. 1993) (issuance
27        of 1099 indicates independent contractor status under test similar to *Borello*).

28        [5] *See* Young Depo. Tr. 15:25-16:14, 16:17-17:8, 29:20-30:2, 135:16-136:11, 210:18-211:2,
          277:15-278:24; Taylor Depo. Tr. 14:20-15:12, 88:22-89:2, 91:4-23, 19:6-15.

09cv2909

- **Plaintiffs paid their own business expenses, could hire assistants, chose their own work location (frequently away from the office), and were paid solely on a commission basis**.[6] Both Taylor and Young met with prospective clients in a variety of locations and performed a substantial amount of their sales activities outside the office. For example, Young admitted that an average of 40 percent of his time was spent away from the office engaged in sales activities. Additionally, Taylor and Young had the ability to hire assistants, which further points toward independent contractor status.

- **W&R had no legally significant right to control the manner and means by which Plaintiffs conducted their sales business**. As noted above, Plaintiffs determined their own business strategy, set the cost for financial plans, chose their own clients, and were free to conduct other business activities in addition to their sales business, within the bounds of regulatory require-ments. W&R did not set financial advisor schedules or office hours. Although Plaintiffs allege that W&R held "mandatory" meetings and exercised some oversight over their activities, Taylor testified that she never saw any materials requiring attendance, and she was not penalized for missing them.[7] Even if Plaintiffs' managers did perform some supervision and monitoring to help improve sales performance, this is not enough to convert Plaintiffs from independent contractors to employees.[8] Importantly, allegations of "control" pursuant to legal requirements

---

[6] *See* Young Depo. Tr. 266:24-268:10 (admitting that he "could have operated [his] own home office"), 199:8-17, 202:24-203:2, 205:9-16, 215:10-13, 220:9-15277:11-14, 257:6-19, 278:1-6, 184:7-13, 186:7-10 (estimating that Taylor was away from the office "[p]erhaps 40, 50 percent" of the time); Taylor Depo. Tr. 64:7-17, 65:6-8, 142:17-22, 143:3-12, 151:8-13, 227:23-228:10; Compl. ¶¶ 66, 102, 112, 114.

[7] *See* Taylor Depo. Tr. 71:16-19, 124:18-125:23, 154:2-16, 156:12-15, 157:19-158:1, 161:8-25, 163:3-9, 166:19-22, 172:8-11, 196:5-10.

[8] *E.g.*, *Fireman's Fund Ins. Co. v. Davis*, 37 Cal. App. 4th 1432, 1442-43 (Cal. Ct. App. 1995) (principal "may retain a broad general power of supervision and control as to the results of the work so as to insure satisfactory performance of the independent contract—including the right to inspect, the right to stop the work, the right to make suggestions or recommendations as to details of the work, the right to prescribe alterations or deviations in the work"—without converting the relationship from an independent contractor to an employment relationship) (citations and quotations omitted).

09cv2909

are not employment indicia,[9] and in any event, Plaintiffs' deposition testimony cited above belies any such alleged "control."

Taken together, the Court agrees that these facts demonstrate Plaintiffs were independent contractors and not employees under the *Borello* standard. Plaintiffs assert that there are triable questions of fact, especially with regard to W&R's alleged control over the Advisors. However, the record seems to indicate otherwise. For example, Plaintiffs claim the Advisors were given regular work schedules and instructed to report to work by 8:30 a.m. However, as discussed above, the record shows they set their own schedules and hours, and they were frequently away from the office during business hours. Similarly, Plaintiffs claim W&R held "mandatory" meetings, but as noted above, the record reflects that Taylor never saw any requirements for those meetings and was not penalized for her absence from them. Likewise, Plaintiffs assert that the alleged "control" W&R exercised far exceeded that required by FINRA and the SEC, yet they present no evidence of how, or in what ways, the control exceeded those regulations. Thus, upon an examination of the record, the Court does not see any material factual disputes.

As further support, Defendant points to the recent *Arnold* case, in which the California Court of Appeal affirmed summary judgment that an insurance agent was an independent contractor under *Borello*. *Arnold v. Mut. of Omaha Ins. Co.*, 202 Cal. App. 4th 580 (Cal. Ct. App. 2011). *Arnold* appears to be analogous, since W&R's relationship with the Advisors shares many of the characteristics of Mutual of Omaha's relationship with its insurance agents in that case.[10] Plaintiffs contend that *Arnold* is

[9] As members of FINRA, W&R and financial advisors are subject to FINRA regulations, as well as a variety of other securities requirements. Plaintiffs make much of the alleged "control" that W&R exercised over them. However, the vast majority of Plaintiffs' misclassification allegations relate to W&R's conduct mandated by FINRA and SEC requirements, including licensing requirements, and other laws. As Judge Sabraw previously recognized in this case, terms of a putative "employment" relationship imposed by legal requirements do not suggest control by W&R. (*See* Doc. 48 at 5:4-6 ("The Court agrees . . . that compliance with legal requirements is not indicative of control for purposes of establishing an employer-employee relationship.").)

[10] In that case, Kimbly Arnold was an insurance agent who sued Mutual of Omaha for unpaid wages and reimbursements under the California Labor Code based on her purported misclassification as an independent contractor. *Arnold*, 202 Cal. App. 4th at 582-83. Summary judgment evidence showed that Arnold was licensed by the Department of Insurance as an independent agent or broker, who was authorized to offer products from different companies. *Id.* at 584. She had a contract with Mutual of Omaha stating that she was "an independent contractor and not an employee," that no terms of the contract "shall be construed as creating an employer-employee relationship," and that she was "free to

1    distinguishable because there, the agents could sell products from different companies, whereas here,

2    Plaintiffs could sell only W&R-approved products. However, the Court notes that here, Plaintiffs were

3    nonetheless permitted to pursue other business opportunities outside of W&R (subject to certain

4    regulatory requirements), which weakens Plaintiffs' distinction. *See, e.g.*, Taylor Depo. Tr. 43:18-45:1,

5    95:9-25.

6        Consequently, the Court concludes that under *Borello* and *Arnold*, Plaintiffs Young and Taylor

7    were independent contractors and not employees. The Court therefore **GRANTS** Defendant's motions

8    for summary judgment as to both Young and Taylor. Because the *Borello* test is determinative, the Court

9    need not address Defendant's additional arguments regarding the outside salesperson exemption or the

10    meal period, wage statement, and waiting time claims.

11                                               **IV.**

12                                 **CONCLUSION**

13        For the reasons set forth above, the Court (1) **GRANTS in part and DENIES in part** Plaintiffs'

14    motion for leave to file a Second Amended Complaint and (2) **GRANTS** Defendant's motions for

15    summary judgment as to Plaintiffs Taylor and Young. Plaintiffs have 30 days from the date of this Order

16    //

17    //

18    //

19    //

20    //

21

22    exercise [her] own judgment as to the persons from whom [she] will solicit and the time, place and
manner, and amount of such solicitation." *Id*. at 584-85. Pursuant to the agreement, Arnold used her own

23    judgment in determining whom she would solicit, when and where she would do so, and the amount of
time she spent doing it. *Id*. at 585.  The evidence also showed that agents were invited to attend sales

24    meetings and training sessions. *Id*. Mutual of Omaha managers made themselves available to assist
agents, and training was "offered chiefly for the guidance of 'new' agents" and was "required only with

25    respect to compliance with state law directives." *Id*. at 588. Agents were required to pay for their own
business expenses, and they could, but were not required to, work out of Mutual of Omaha's local

26    office. *Id*. at 585. If they did work from the office, they were required to pay monthly fees to cover
telephone service and associated fees. *Id*. Arnold was paid through commissions on the insurance

27    products she sold and received 1099 tax forms documenting that income. *Id*. at 584. Either party could
terminate the contract at will, and Arnold had to meet minimum performance requirements to avoid

28    automatic termination. *Id*. at 589. The California Court of Appeal held that, even though some of the
factors pointed to an employment relationship, "all the factors weighed and considered as a whole
establish that Arnold was an independent contractor and not an employee." *Id*. at 590.

1    to file their revised Second Amended Complaint containing Mr. Jaeger's claims. Failure to do so will

2    result in the Court's dismissal of the case.

3    **IT IS SO ORDERED.**

4

5    DATED:  August 20, 2012

6                                                        _____

7                                                        Hon. Anthony J. Battaglia
                                                         U.S. District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28