UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL E. TAYLOR, KENNETH B. YOUNG, and BRIAN JAEGER, individuals, on behalf of themselves individually and on behalf of others similarly situated,<br><br>                Plaintiffs,<br>v.<br><br>WADDELL & REED INC., a Delaware Corporation, and DOES 1 through 10 inclusive,<br><br>                Defendants. | Civil No.   09-cv-02909 AJB (WVG)<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF JAEGER**<br><br><br><br><br><br>[Doc. No. 172] |

      Presently before the Court is Defendant Waddell & Reed Inc.'s ("W&R") Motion for Summary Judgment as to Plaintiff Brian Jaeger. (Doc. No. 172.) On August 20, 2012, the Court granted W&R's previous motions for summary judgment as to Plaintiffs Michael E. Taylor and Kenneth B. Young. (Doc. No. 167.) Thus, Jaeger is the sole remaining Plaintiff in this action. For the reasons set forth below, the Court **GRANTS** W&R's motion for summary judgment as to Jaeger's claims.[1]

---

[1] At the outset, the Court notes that much of the factual background, legal standard and analysis set forth in the Court's previous summary judgment order remains applicable and is incorporated when appropriate herein.

### *Subject Matter Jurisdiction*

As noted above, despite their inclusion in the operative Second Amended Complaint ("SAC"), the Court granted Defendants summary judgment as to Taylor and Young on August 20, 2012. (Doc. No. 167.) In the same order, the Court granted Plaintiffs' counsel thirty days to file a revised SAC containing Jaeger's claims. (*Id.* at 10-11.) On September 12, 2012, counsel filed the SAC which added Jaeger as a Plaintiff, but failed to remove Young and Taylor. (Doc. No. 170.) Insomuch as the Court previously granted summary judgment with regard to Young and Taylor on the same claims reasserted on their behalf in the SAC, these claims have already been ruled upon and the Court will not readdress them here. Accordingly, the Court limits its consideration to those claims pled on behalf of Jaeger as the sole remaining Plaintiff.

The SAC contends that the Court has subject matter jurisdiction based upon Taylor and Young's federal Fair Labor Standards Act ("FLSA") claims. (Doc. No. 170 at 5, ¶ 11.) This becomes problematic as the Court granted Defendants' summary judgment as to Taylor and Young's FLSA claims, and Taylor and Young are no longer plaintiffs in this action. (Doc. No. 137.) Jaeger, while referenced at various times throughout the SAC, is not included within the FLSA allegations.[2] As a result, Jaeger's state law claims are the only remaining causes of action, and there is no longer an independent basis for finding subject matter jurisdiction. Nevertheless, supplemental jurisdiction may exist over state-law claims that are so related to the federal-law claims that they form part of the same case or controversy. *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citations omitted). In situations such as this one, a "district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." *Id.* In the interest of judicial economy and having previously addressed similar issues with regard to Taylor and Young, the Court finds it appropriate to exercise supplemental jurisdiction over Jaeger's state-law claims. Accordingly, the Court will now turn to the merits of W&R's motion.

---

[2] The SAC repeatedly refers to Young and Taylor as the "FLSA Plaintiffs," but never includes Jaeger in this category; rather, the SAC includes Jaeger in the "California Plaintiffs" category.

### *Background*

This matter is a proposed wage and hour collective action brought by former W&R financial advisors ("Advisors"). (SAC, Doc. No. 170 at ¶ 1.) Jaeger seeks to represent a class of Advisors who allege they were incorrectly classified as independent contractors when, in fact, they were employees. (*Id*. at ¶¶ 3, 5.)

W&R sells financial products, which are distributed through a sales force of Advisors. (*Id*. at ¶ 2.) When Advisors begin working for W&R, they are required to sign a "Professional Career Agreement" ("PCA"). (*Id*. at ¶ 35.) The PCA provides the basic terms governing the association with W&R Inc. and Waddell & Reed Affiliates ("W&R Affiliates"). (*Id*.) The PCA classifies Advisors as independent contractors and provides for payment on a commission-only basis. (*Id*. at ¶ 35, 100, 104.) Specifically, the PCA states: "At all times you shall act as an independent contractor, and nothing in this agreement shall be construed to create or to impose conditions that create the relationship of employer and employee between you and W&R." (PCA, Doc. No. 1 at 40, ¶ 8.) With regard to the independent contractor relationship, the PCA specifically states, "Subject to the responsibilities and limitations stated in this Agreement, you shall be free to use W&R office facilities and to exercise your own judgment as to the persons whom you solicit and the time, place and manner of solicitation." (*Id.* at 40, ¶ 7.) In accordance with the PCA's terms, Advisors did not receive a salary or hourly wage and were not paid overtime. (SAC, Doc. No. 170 at ¶¶ 102-104.)

Plaintiffs Taylor and Young filed suit on December 28, 2009, alleging nine causes of action for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206-207, the California Labor Code, and California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, et. seq. (Doc. No. 1.) On April 28, 2010, Taylor and Young filed a First Amended Complaint ("FAC"). (Doc. No. 21.) W&R previously filed motions for partial summary judgment as to Taylor and Young's FLSA claims. (Doc. No. 91 and 92.) On January 3, 2012, the Court granted W&R's motions, finding that the FLSA claims failed because Taylor and Young fell under the FLSA's "outside salesperson" exemption. (Doc. No. 137.) The Court simultaneously denied as moot Plaintiffs' motion for conditional class certification since it involved only the FLSA claims. (Doc. No. 137.) Plaintiffs filed a motion to amend on March 12, 2012. (Doc. No. 142.) W&R subsequently filed a motions for summary judgment as to Young,

(Doc. No. 149), and Taylor, (Doc. No. 150), on June 21, 2012. On August 20, 2012, the Court granted W&R's motions for summary judgment as the remainder of Taylor and Young's claims. (Doc. No. 167.) The Court also granted Plaintiffs' counsel leave to file a SAC adding Jaeger's claims within thirty days. (*Id.*)

On September 12, 2012, counsel filed a SAC properly adding Jaeger as Plaintiff. (Doc. No. 170.) In the SAC, Jaeger alleges the following state law claims: (1) Failure to Pay Timely Wages and Fringe Benefits During Employment and Upon Separation of Employment in violation of California Labor Code §§ 201, 202, 203, 204, 218.5, 218.6; (2) Failure to Pay Minimum Wages in violation of California Labor Code §§ 1182.12, 1194, 1194.2, 1197, and Wage Order No. 4-2001 § 4(A); (3) Failure to Pay Overtime Compensation in violation of California Labor Code §§ 510, 1194, and Wage Order No. 4-2001 § 3(A); (4) Failure to Provide Meal Periods in violation of California Labor Code §§ 226.7 and 512 and Wage Order No. 4-2001 § 11(A); (5) Failure to Reimburse Losses and Expenditures Incurred in violation of California Labor Code § 2802; (6) Violations of California Labor Code § 226 for Failure to Provide Itemized Wage Statements; (7) Remedies for Violations of the California Unfair Business Practices Code § 17200 *et seq.*; (8) Violation of Attorneys General Act, Labor Code § 2698 et seq. (*Id.*) W&R now moves for summary judgment as to Jaeger's claims. (Doc. No. 172.)

### *Legal Standard*

Under Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict for a non-moving party. *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006).

In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the nonmoving party's claim, or to a defense on which the nonmoving party will bear the burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F. 3d 1099, 1102 (9th Cir. 2000). When the nonmoving party would bear the burden of proof at trial, the moving party may satisfy its burden on summary judgment

by simply pointing out to the Court an absence of evidence from the nonmoving party. *Miller*, 454 F.3d at 987. "The moving party need not disprove the other party's case." *Id.*

Once the movant has made that showing, the burden shifts to the opposing party to produce "evidence that is significantly probative or more then 'merely colorable' that a genuine issue of material fact exists for trial." *LVRC Holdings, LLC v. Brekka*, 581 F.3d 1127, 1137 (9th Cir. 2009) (citing *FTC v. Gills*, 265 F.3d 944, 954 (9th Cir. 2001)); *see also Miller*, 454 F.3d at 988 ("[T]he nonmoving party must come forward with more than 'the mere existence of a scintilla of evidence.'") (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The Court must review the record as a whole and draw all reasonable inferences in favor of the nonmoving party. *Hernandez v. Spacelabs Med. Inc.*, 343 F3d 736, 738 (9th Cir. 2000). However, unsupported conjecture or conclusory statements are insufficient to defeat summary judgment. *Id.*; *Surrell v. Cal. Water Service Co.*, 518 F.3d 1097, 1103 (9th Cir. 2008). "Thus, '[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *Miller*, 454 F. 3d at 988 (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## *Discussion*

To succeed on his California wage and hour claims, Jaeger must have been acting as W&R's "employee" rather than an independent contractor.[3] W&R argues that Jaeger was an independent contractor, not an employee; thus, summary judgment is warranted because Jaeger has no valid cause of action. Jaeger contends that W&R has not has not met its burden of proof for summary judgment under the test for employment set forth in *Martinez v. Combs*. 49 Cal.4th 35, 64 (2010).[4]

---

[3] *See* Cal. Labor Code §§ 201-204, 218, 226, 510, 512, 1194, 1197, 2802; IWC Wage Order 4-2001.

[4] In *Martinez*, seasonal agricultural workers, who were employed by a strawberry farmer, brought action against first produce merchant, second produce merchant, and a field representative for second produce merchant, seeking to recover unpaid minimum wages. 49 Cal. 4th at 35. The court held that the merchants and field representative were not joint employers of the agricultural workers, and therefore could not be held liable for unpaid minimum wages under IWC's wage order 14, which governs agricultural occupations. *Id.* at 74. The court reasoned that the merchants and field representative did not exercise sufficient control over agricultural workers in light of the totality of the circumstances, despite telling workers how they wanted strawberries packed and pointing out mistakes in packing. *Id.* at 77.

In *Martinez*, the California Supreme Court interpreted the Industrial Welfare Commission ("IWC") Wage Order's definition of employment[5] to embody three alternative definitions. Employment "means: (a) to exercise control over the wages, hours or working conditions, or (b) to suffer or permit to work, or (c) to engage, thereby creating a common law employment relationship."[6] *Martinez* also held that, in actions under California Labor Code Section 1194 to recover unpaid wages, an IWC wage order governing a subject industry defines the employment relationship, and thus also determines who may be liable as an employer for unpaid wages. *Id*. at 56. Accordingly, the Court applies the *Martinez* definition to determine whether an employer-employee relationship existed in this instance. *See Futrell v. Payday California, Inc.*, 190 Cal. App.4th 1419, 1429 (2010).

**A. "To exercise control over the wages, hours or working conditions"**

The first method of establishing an employment relationship under *Martinez* requires evidence that the alleged employer "exercise[d] control over the wages, hours or working conditions." *Martinez*, 49 Cal. 35 at 71. Jaeger contends that "[a]t the very least, W&R exercise[d] control over Jaeger's wages . . . ."[7] However, the evidence presented contradicts Jaeger's assertion. The SAC acknowledges that Jaeger was paid solely on a commission basis, indicating that W&R did not control Jaeger's wages.[8] Further, Jaeger set his own hours and schedule.[9] At his discretion, Jaeger chose to perform some sales activities outside of the office.[10] Jaeger chose his own work location; chose his own clients; determined his own business strategy; and was free to conduct business activities in addition to his sales business,

---

[5] The court in *Martinez* also determined that the IWC's definition of employment did not incorporate the federal definition of employment under the FLSA. *Martinez*, 49 Cal.4th at 64. As noted above, the Court granted summary judgment as to Young and Taylor's claims under FLSA on January 3, 2012 in accordance with the "outside salesperson" exemption. (Doc. No. 137.) Thus, the IWC's definition of employment remains applicable to Jaeger's state law claims.

[6] *Martinez*, 49 Cal.4th at 64.

[7] *See* Am. Pl's Opp., Doc. No. 180 at 1:27-28.

[8] *See* SAC, Doc. No. 170 at ¶¶ 30, 100, 104.

[9] *See* Jaeger Depo. Tr., Doc. No. 172-3 at 27:17-20; 29:16-19; 62:12-17; 153:17-154:10; 169:11-25.

[10] *See* Jaeger Depo. Tr., Doc. No. 172-3 at 82:13-22; 119: 22-120:9.

within the bounds of regulatory requirements. Although Jaeger alleges that W&R held "mandatory" meetings and exercised some oversight over his activities,[11] this is simply an example of W&R's "broad general power . . . to insure satisfactory performance," which is not enough to convert Plaintiff from an independent contractor to an employee. *Fireman's Fund Ins. Co. v. Davis*, 37 Cal. App. 4th 1432, 1442-43 (1995). Considering the totality of the circumstances, W&R did not retain control sufficient to transform the independent contractor relationship into an employment relationship.

**B. "To suffer or permit to work"**

With regard to the second means of establishing an employment relationship under *Martinez*, Jaeger offers little in the way of support for his contention that W&R suffered or permitted him to work. Jaeger simply states that W&R "'suffers or permits' him to work" without providing any factual assertions or analysis.[12] Nevertheless, the Court will consider whether W&R suffered or permitted Jaeger to work pursuant to the *Martinez* definition.

Historically, the language, "suffer or permit," was "generally understood to impose liability on the proprietor of a business who knew child labor was occurring in the enterprise but failed to prevent it, despite the absence of a common law employment relationship." *Martinez*, 49 Cal. 4th at 69. In interpreting this standard, the *Martinez* court held that "the historical meaning continues to be highly relevant today: A proprietor who knows that persons are working in his or her business without having been formally hired, or while being paid less than the minimum wage, clearly suffers or permits that work by failing to prevent it, while having the power to do so." *Martinez*, 49 Cal. 4th at 69.

The "suffer or permit to work" standard, however, has typically been applied in the context of joint-employer situations.[13] For example, a joint-employer situation exists where a plaintiff claims that

---

[11] *See* SAC, Doc. No. 170 at 12 ¶ 66.

[12] *See* Am. Pl's Opp., Doc. No. 180 at 1:27-28; 2:1.

[13] *Martinez v. Combs*, 49 Cal. 4th 35 (2010) (Produce merchants and field representatives did not "suffer or permit" seasonal agriculture workers to work in light of mere contractual relationship between produce merchants/field representatives and workers' employer, a farmer (i.e. no joint employer relationship).); *Futrell v. Payday California, Inc.*, 190 Cal. App. 4th 1419 (2010) (Payroll processing company, which operated in the local television production industry and which issued paychecks to worker who provided traffic and crowd control services during commercial shoot, did not

1  in addition to being the employee of their primary-employer, plaintiff also qualifies as an employee of a
2  third-party proprietor with whom the primary-employer does business. The rationale is that the third-
3  party proprietor has "suffered or permitted" plaintiff to work in that instance. Here, there are no facts to
4  warrant such analysis under the "suffer or permit" standard. Jaeger claims to be the employee of W&R;
5  W&R is the sole named Defendant; and no third-party is involved, much less alleged to have "suffered
6  or permitted" Jaeger to work. Accordingly, the Court does not find that W&R suffered or permitted
7  Jaeger to work within the meaning of the second *Martinez* factor.

**C. "To engage, thereby creating a common law employment relationship"**

The third way to establish an employment relationship under the *Martinez* test requires demonstration of a common law employment relationship. *Martinez* clarified that the common law test still plays an important role in the IWC's definition of the employment relationship as it "incorporates the common law definition as *one alternative*." 49 Cal.4th 35, 64 (2010). As set forth in this Court's prior summary judgment order (Doc. No. 167 at 6:3-4), California's common law test for determining worker status is explained in *S.G. Borello & Sons, Inc. v. Department of Industrial Relations*, 48 Cal.3d 341 (1989). Under *Borello*, the "principle test of an employment relationship" is "[w]hether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired." *Id*. at 350 (citations and quotations omitted). *Borello* also recognizes the following "[a]dditional factors" for determining worker classification: whether the worker is engaged in a distinct occupation or business; the kind of occupation, with reference to whether the work is usually done under the direction of the principal or by a specialist without supervision, in the locality; the skill required in the occupation; whether the principal or the worker supplies the instrumentalities, tools, and place of work; the length of time over which the services are to be performed; the method of payment, whether by the time or by the job; whether the work is part of the regular business of the principal; whether the

---

qualify as worker's joint employer under the "suffer or permit to work" standard.); *Guifu Li v. A Perfect Day Franchise, Inc*., 281 F.R.D. 373, 402 (N.D. Cal. 2012) (Court held there to be genuine issues of material fact as to whether massage therapy school suffered or permitted therapists to work at massage corporation, precluding summary judgment on issue of whether school and corporation were joint employer of massage therapists.)

principal has the right to discharge at will, without cause; and whether the parties believe they are creating an employment relationship. *Borello*, 48 Cal. 3d at 350-51; *see also Arnold v. Mutual of Omaha Ins. Co.*, 202 Cal. App. 4th 580, 584 (Cal. Ct. App. 2011).

The individual *Borello* factors "cannot be applied mechanically as separate tests; they are intertwined and their weight often depends on particular combinations." *Borello*, 48 Cal. 3d at 351 (internal citations and quotations omitted). "Even if one or two of the individual factors might suggest an employment relationship, summary judgment is nevertheless proper when . . . all the factors weighed and considered as a whole establish that [plaintiff] was an independent contractor and not an employee." *Arnold*, 202 Cal. App. 4th at 590 (citations omitted).

Here, W&R argues that when the *Borello* factors are weighed and considered as a whole, the undisputed evidence shows that Jaeger was an independent contractors and not an employee. The Court agrees and finds the following facts to be particularly indicative of Jaeger's independent contractor status:

- **Jaeger believed he was creating, and intended to create, an independent contractor relationship.**[14] The PCA that Jaeger signed evidences both W&R and Jaeger's intent and mutual understanding that Jaeger was an independent contractor affiliated with W&R, not an employee.[15] The PCA's "notice of termination" provision indicates independent contractor status, and the Court previously found that the PCA's language indicated W&R intended for Advisors to have free rein to conduct their sales work in the manner and place of their choosing.[16] Further, Jaeger signed a second agreement when he voluntarily chose to participate in the New Financial Advisor Transition Program ("NFATP") whereby he acknowledged ". . .

---

[14] *See Barnhart v. N.Y. Life Ins. Co.*, 141 F.3d 1310, 1313 (9th Cir. 1998) (contract containing clear language that individual was an independent contractor, not an employee, supported finding of independent contractor status).

[15] *See also* Jaeger Depo. Tr., Doc. No. 172-3, 37:8-14; SAC, Doc. No. 170 at ¶¶ 30, 32, 35, 100, 104; PCA, Doc. No. 1 at 39-40.

[16] *See* Jaeger Depo. Tr., Doc. No. 172-3 at 40:15-41:2; PCA, Doc. No. 1 at 40.

this is not an employment agreement. Advisor is and at all times during his/her affiliation with Waddell and Reed will be an independent contractor."[17]

- **Jaeger reported his earnings based on 1099s**.[18] In addition, Jaeger deducted his business expenses and certified in his federal tax forms, under penalty of perjury, that he was an independent proprietor. Tax treatment and the way workers characterize their taxes may be indicative of the true nature of their employment status.[19]

- **Jaeger's sales business was a "distinct business" that required licenses and skill to operate.**[20] W&R paid Jaeger semi-annually for his services selling securities offered by W&R at a respective commission rate.[21] However, Jaeger also sold financial plans and insurance which were not W&R products.[22] Jaeger ran his own business providing financial planning services, investment products, and insurance. To do so, he had to be highly skilled and licensed. He determined his own business strategies, made his own business decisions, and determined who he would target as potential clients.

---

[17] *See* Doc. No. 172-6 at 2.

[18] *See* Jaeger Depo. Tr., Doc. No. 172-3 at 91:5-10.

[19] *See Barnes v. Colonial Life & Accident Ins. Co.*, 818 F. Supp. 978, 981 (N.D. Tex. 1993) (issuance of 1099 indicates independent contractor status under test similar to *Borello*).

[20] *See* Jaeger Depo. Tr., Doc. No. 172-3 at 2:19-21 (engineering degree),7:21-8:10, 8:24-9:11, 10:1-16, 30:7-31:5, 87:10-14 (licensed in 6 states); 9:12-19, 11:23-12:16, (spent 40-50 hours per week from April to July to prepare for license exams); 57:17-24, 57:25-58:5 (prepared own financial plans); 27:6-28:4, 29:24-30:6, 61:11-23; SAC, Doc. No. 170 at ¶ ¶ 46, 56 (chose clients and decided which products to sell each client).

[21] PCA, Doc. No. 1 at 39.

[22] *See* Jaeger Depo. Tr., Doc. No. 172-3 at 31:21-32:3; SAC at ¶ 56.

- **Jaeger paid his own business expenses, had the authority to hire assistants, chose his own work location (frequently away from the office), and was paid solely on a commission basis**.[23] Jaeger met with prospective clients in a variety of locations and performed a substantial amount of his sales activities outside the office. Additionally, Jaeger had the ability to hire assistants, which further lends itself to independent contractor status.

- **W&R had no legally significant right to control the manner and means by which Jaeger conducted his sales business**. As noted above, Jaeger determined his own business strategy, set the cost for financial plans, chose his own clients, and was free to conduct other business activities in addition to his sales business, within the bounds of regulatory requirements. W&R did not set financial advisor schedules or office hours. Although Jaeger alleges that W&R held "mandatory" meetings and exercised some oversight over his activities, Jaeger testified that he was only required to attend training in his first year pursuant to the NFATP, a program he voluntarily joined and for which he signed an agreement stating he would do certain reporting and attend training as an independent contractor.[24] Apart from the NFATP, W&R does not require financial advisors to attend training or use the resources W&R offers.[25] Even if Jaeger's managers did perform some supervision and monitoring to help improve sales performance, this is not enough to convert Jaeger from an independent contractor to an employee.[26] Importantly,

---

[23] *See* Jaeger Depo. Tr., Doc. No. 172-3 at 123:17-19, 124:13-22, 126:2-20, 164:16-165:16 (Jaeger conducted sales and marketing activities outside the office); Doc. 172-6 at 20-21 (marketing events planned by Jaeger and his partner).

[24] *See* Jaeger Depo Tr., Doc. No. 172-3 at 54:6-55:8, 59:24-60:6.

[25] *See* Jaeger Depo. Tr., Doc. No. 172-3 at 103:1-5.

[26] *E.g.*, *Fireman's Fund Ins. Co. v. Davis*, 37 Cal. App. 4th 1432, 1442-43 (Cal. Ct. App. 1995) (principal "may retain a broad general power of supervision and control as to the results of the work so as to insure satisfactory performance of the independent contract—including the right to inspect, the right to stop the work, the right to make suggestions or recommendations as to details of the work, the right to prescribe alterations or deviations in the work"—without converting the relationship from an independent contractor to an employment relationship) (citations and quotations omitted).

allegations of "control" pursuant to legal requirements are not employment indicia,[27] and in any event, Jaeger's deposition testimony regarding his voluntary participation in NFATP belies any such alleged "control" exercised by W&R.

Taken together, the Court agrees that these facts demonstrate Jaeger was an independent contractor and not an employee under the common law standard. Jaeger asserts that there are triable questions of fact, especially with regard to W&R's alleged control over Advisors; however, the record indicates otherwise. For example, Jaeger claims the Advisors were given regular work schedules proposed by W&R.[28] However, as discussed above, the record shows Jaeger set his own schedules and hours and was frequently away from the office during business hours.[29] Similarly, Jaeger asserts that the alleged "control" W&R exercised far exceeded that required by applicable insurance and securities regulations.[30] The evidence presented by Jaeger, however, suggests minimal control in light of the totality of the factors. As held in *Arnold*, " . . . all the factors [must be] weighed and considered as a whole . . ." 202 Cal. App. 4th at 590 (citations omitted). When weighed as a whole, the fact that W&R requires their financial advisors to purchase business cards from their broker/dealer, prohibits the personal use of email, and allows for the fining of brokers/dealers in connection with trading errors does not outweigh the numerous factors that weigh in favor of Jaeger being classified as an independent contractor. Thus, upon an examination of the totality of the evidence, Jaeger has not provided proof sufficient to create a genuine issue of material fact as to his employment status.

---

[27] As members of the Financial Industry Regulatory Authority, Inc. ("FINRA"), W&R and financial advisors are subject to FINRA regulations, as well as a variety of other securities requirements. Jaeger argues the alleged "control" that W&R exercised over him is indicative of an employment relationship. However, the vast majority of Jaeger's misclassification allegations relate to W&R's conduct mandated by FINRA and SEC requirements, including licensing requirements and other regulations. As Judge Sabraw previously recognized in this case, terms of a putative "employment" relationship imposed by legal requirements do not suggest control by W&R. (*See* Order Denying Motion to Dismiss, Doc. No. 48 at 5:4-6 (generally, "compliance with legal requirements is not indicative of control for purposes of establishing an employer-employee relationship.").)

[28] SAC, Doc. No. 170 at ¶ 2.

[29] *Supra* note 22.

[30] *Supra* note 27; Am. Pl's Opp., Doc. No. 180 at 13:9-27.

As further support for Jaeger having been correctly classified as an independent contractor, W&R points to the recent *Arnold* case in which the California Court of Appeal affirmed the district court's conclusion that an insurance agent was an independent contractor in accordance with the *Borello* factors.[31] *Arnold v. Mut. of Omaha Ins. Co.*, 202 Cal. App. 4th 580 (Cal. Ct. App. 2011). Jaeger contends that *Arnold* is distinguishable because the agents could sell products from different companies in *Arnold*, whereas here, Jaeger could sell only W&R-approved products. However, the Court notes that Jaeger was nonetheless permitted to pursue other business opportunities outside of W&R (subject to certain regulatory requirements), which weakens Jaeger's distinction.[32] In fact, *Arnold* appears to be analogous as W&R's relationship with its Advisors shares many of the same characteristics as Mutual of Omaha's relationship with its insurance agents in that case. Consequently, the Court concludes that under *Martinez's* test of employment, Jaeger was an independent contractors and not an employee.

Insomuch as Jaeger has not established employee status under *Martinez*, he is appropriately deemed an independent contractor. Thus, the Court need not address Jaeger's additional state law claims regarding timely payment of wages and benefits, minimum wage, failure to pay overtime, meal

---

[31] In *Arnold*, Kimbly Arnold was an insurance agent who sued Mutual of Omaha for unpaid wages and reimbursements under the California Labor Code based on her purported misclassification as an independent contractor. *Arnold*, 202 Cal. App. 4th at 582-83. Summary judgment evidence showed that Arnold was licensed by the Department of Insurance as an independent agent or broker who was authorized to offer products from different companies. *Id*. at 584. She had a contract with Mutual of Omaha stating that she was "an independent contractor and not an employee," that no terms of the contract "shall be construed as creating an employer-employee relationship," and that she was "free to exercise [her] own judgment as to the persons from whom [she] will solicit and the time, place and manner, and amount of such solicitation." *Id*. at 584-85. Pursuant to the agreement, Arnold used her own judgment in determining whom she would solicit, when and where she would do so, and the amount of time she spent doing it. *Id*. at 585. The evidence also showed that agents were invited to attend sales meetings and training sessions. *Id*. Mutual of Omaha managers made themselves available to assist agents, and training was "offered chiefly for the guidance of 'new' agents" and was "required only with respect to compliance with state law directives." *Id*. at 588. Agents were required to pay for their own business expenses, and they could, but were not required to, work out of Mutual of Omaha's local office. *Id*. at 585. If they did work from the office, they were required to pay monthly fees to cover telephone service and associated fees. *Id*. Arnold was paid through commissions on the insurance products she sold and received 1099 tax forms documenting that income. *Id*. at 584. Either party could terminate the contract at will, and Arnold had to meet minimum performance requirements to avoid automatic termination. *Id*. at 589. The California Court of Appeal held that, even though some of the factors pointed to an employment relationship, "all the factors weighed and considered as a whole establish that Arnold was an independent contractor and not an employee." *Id*. at 590.

[32] *See* Jaeger Depo. Tr., Doc. No. 172-3 at 31:21-32:3; SAC, Doc. No. 170 at ¶ 56.

periods, reimbursement of losses and expenditures incurred, and wage statements as these claims are conditioned upon Jaeger being properly classified as an employee. Accordingly, the Court grants W&R's summary judgment motion as to Jaeger's state law claims as well.[33]

### *Conclusion*

For the reasons set forth above, the Court **GRANTS** W&R's motion for summary judgment as to Plaintiff Jaeger. The Clerk of the Court is instructed to enter judgment and close the case accordingly.

**IT IS SO ORDERED.**

DATED: February 1, 2013

_____
Hon. Anthony J. Battaglia
U.S. District Judge

---

[33] As noted above, Jaeger was not included in the SAC's FLSA claim. Regardless, in light of Jaeger's status as an independent contractor, FLSA would be inapplicable as it only applies to employment relationships. (*See* Previous Order, Doc. No. 167.)